SIERRA CLUB, Northern Alaska Environmental Center, Wilderness Society, Birch Creek Village Council, Minto Village Council, Golovin Traditional Council, Nunam Kitlutsisti, and Cenaliulriit Coastal Management District, Plaintiffs–Appellants–Cross–Appellees,

v.

Michael PENFOLD, Director of the Alaska State Office of the Bureau of Land Management, Donald P. Hodel, Secretary of the Interior, Robert F. Burford, Director of the Bureau of Land Management, Donald E. Runberg, Acting District Manager of the Fairbanks District Office of the Alaska State Office of the Bureau of Land Management, Wayne A. Boden, District Manager of the Anchorage District of the Alaska State Office of the Bureau of Land Management, Department of the Interior, and Bureau of Land Management, Defendants-Appellees-Cross-Appellants.

and

Alaska Miners Association, Miners Advocacy Council, Valdez Creek Group, and Joseph Vogler, Defendants–Intervenors–Appellees–Cross–Appellants.

Nos. 87–3597, 87–4094, 87–4132 and 87–4209.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1987.

Reargued Dec. 9, 1987.

Resubmitted Dec. 9, 1987.

Decided Sept. 21, 1988.

As Amended Oct. 21, 1988.

Philip S. Barnett, Sierra Club Legal Defense Fund, Inc., Juneau, Alaska, for plaintiffs-appellants-cross-appellees.

Blake A. Watson, Dept. of Justice, Washington, D.C., for defendants-appellees-cross-appellants.

James S. Burling, Pacific Legal Foundation, Anchorage, Alaska, for defendants-intervenors-appellees-cross-appellants.

Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges.

J. BLAINE ANDERSON,* Circuit Judge:

This case involves a plethora of issues and a number of separate actions which were consolidated for purposes of appellate review. The actions center around federal regulation of placer mining on public lands in Alaska. Since each appeal involves facts and issues peculiar to it, the appeals are addressed separately. The additional facts necessary for each appeal are added where appropriate.

INTRODUCTION

A "placer" is an alluvial or glacial deposit containing particles of gold. To extract the gold, a miner first removes the vegetation and surface soil. The gold-bearing soil (pay dirt) is then removed and put in a sluice box. A sluice box is a channel with intermittent dams. When water is run through the box, the lighter materials are flushed away while the gold remains. The lighter materials, sands, silts and clays, are discharged from the box. When the discharge is excessive, it can enter streams, killing fish, aquatic life and vegetation, and generally contaminate the waste water in surrounding areas. The size of a placer mine can vary greatly—from very large mines using bulldozers, pumps and heavy equipment, to small one-person pick and shovel operations.

In 1980, in an effort to manage placer mining on federal lands, the Bureau of Land Management ("BLM") adopted regulations establishing procedures to prevent unnecessary or undue degradation resulting from placer mining. For regulatory purposes, BLM divided mining operations into three categories according to the size and location of the mine. Mines which cause a cumulative surface disturbance of more than five acres in any calendar year or any mine other than a casual mine which is located in a specially designated area of preservation, is identified as a "Plan" mine. 43 C.F.R. § 3809.1–4 (1986). A Plan mine operation is only permitted after it has been approved by the BLM. Approval requires review through an environmental assessment, 43 C.F.R. § 3809.2–1, and a subsistence evaluation, 16 U.S.C. § 3120. The purpose behind approval is to minimize the adverse environmental effects of the mining activity.

Mining operations which result in only negligible disturbance of federal lands, i.e., those generally not involving the use of mechanized earth-moving equipment, motorized vehicles or explosives, are identified as "Casual" use mines. 43 C.F.R. § 3809.0–5(b). For Casual use mines no notification to or approval by BLM is required. But, Casual use operations are subject to monitoring to ensure that unnecessary or undue degradation does not occur. 43 C.F.R. § 3809.1–2.

The third category of mine is the "Notice" mine. This mining operation causes a cumulative surface disturbance of five acres or less per year. 43 C.F.R. § 3809.1–3(a). A Notice mining operation does not require approval by BLM before a miner can commence developing the mine. 43 C.F.R. § 3809.1–3(b). However, at least 15 days before beginning to mine, the Notice mine operator must give notice or a letter to BLM informing it of the address of the mine operator, identifying the mining claim and describing the activities proposed and the proposed start-up date. 43 C.F.R. § 3809.1–3(c). Additionally, the notice must include a statement that reclamation of disturbed areas will be completed and that reasonable measures will be taken to prevent unnecessary or undue degradation of the lands during operations. 43 C.F.R. § 3809.1–3(d). After BLM has reviewed the notice, it sends the operator a return letter indicating either: (a) the information in the notice is complete and meets federal mining regulations contained in 43 C.F.R. § 3809.1–3(c); or that (b) the notice is incomplete and mining operations may not begin until 15 days after a completed notice is received. *BLM Manual: H–3809–1—Surface Management.* If an operator fails to file a notice he can be subject to, at the discretion of the BLM, being served

* Before Judge Anderson's death on April 17, 1988, he wrote this opinion.

with a notice of noncompliance or being enjoined from operating and held liable for damages for the unlawful acts until a notice is filed. 43 C.F.R. § 3809.3–2. Notice mine operations are subject to monitoring by BLM to ensure operators are not causing unnecessary or undue degradation. 43 C.F.R. § 3809.1–3(e). Periodic inspections to ensure compliance are permitted. 43 C.F.R. § 3809.3–6. Failure to prevent degradation may cause the operator to be subject to a notice of noncompliance. 43 C.F.R. § 3809.1–3(f).

APPEAL NO. 87–3597

## 1. FACTS AND PROCEEDINGS BELOW

In February, 1986, Sierra Club and a number of additional environmental groups (collectively "Sierra Club") filed suit against Michael Penfold as director of the Alaska BLM Office and other federal officials in the federal district court of Alaska, alleging *inter alia*, that BLM's regulatory practices of Notice mining operations violated numerous federal acts and federal regulations. The Alaska Miners Association and other groups representing miners and the mining industry (collectively "Miners") intervened.[1] Sierra Club requested injunctive relief requiring BLM to comply with the federal environmental laws and to disapprove Notice mine operations conducted without an environmental assessment under 40 C.F.R. § 1508.9. After reviewing the claim, the district court denied Sierra Club's motion for partial summary judgment for a permanent injunction on the compliance issue.

Sierra Club timely appealed denial of its motion for partial summary judgment. A motions panel of this court granted appellate jurisdiction, denied injunctive relief pending appeal, and set the matter for expedited appeal. The appeal was initially submitted and heard by this panel on August 6, 1987. We followed the motions panel and granted initial review, finding appellate jurisdiction existed under 28 U.S.C. § 1292(a)(1) in that denial of the motion for partial summary judgment could be construed as denial of an injunction. *See*

*Loya v. INS.*, 583 F.2d 1110, 1112 (9th Cir.1978).

On the merits, we determined that Sierra Club's challenge to BLM's Notice mine practices could be construed: (1) as requiring each Notice mine to have an environmental assessment before that operation commenced, *or* (2) as a challenge to the regulation itself in that BLM erred in "drawing the line" for Notice mines at five acres instead of a lesser amount because mines disturbing over five acres fall within the Plan mine regulation which require review through an environmental assessment. Accordingly, we ordered a remand to the district court for 60 days. We requested the district court to permit the parties to consider the agency record and to address the validity of the mining regulation itself as set forth in 43 C.F.R. § 3809.1–3.

On November 6, 1987, the district court filed its Memorandum and Order on the remand. [Supp.ER: 272]. The district court first considered the scope of our remand order and held that review was not strictly limited to the question of the validity of 43 C.F.R. § 3809.1–3. Although promulgated in 1980, the accompanying regulation for Plan mines, 43 C.F.R. § 3809.1–4, was amended in 1983, thereby expanding the number of Notice mines covered by § 3809.1–3. *See* 48 Fed.Reg. 8816 (1983). Accordingly, the district court ruled the remand order encompassed a challenge to both regulations.

After construing the scope of our remand order, the district court addressed the validity of the Notice mine regulations, i.e., whether they had been promulgated in a procedurally defective manner. On this issue, the district court ruled that Sierra Club's February, 1986, complaint did not include such a claim because the challenge was to the regulations as applied. But, the district court allowed Sierra Club to amend its complaint to include a procedural challenge to the 1980 rulemaking in that in adopting the regulations BLM failed to follow the procedures required by the Nation-

---

1. The Valdez Creek Group was dismissed and summary judgment was entered against Joseph Vogler. Those parties are not parties to this appeal.

al Environmental Policy Act and the Alaska National Interest Lands Conservation Act. The court also allowed the amendment to include both a procedural and substantive challenge to the 1983 amendments to the regulations.[2] However, the court then ruled that the procedural challenge to the validity of the 1980 rulemaking was barred by the six-year statute of limitations contained in 28 U.S.C. § 2401(a), while the challenge to the 1983 rulemaking was not. The court therefore ordered the amendments challenging the 1980 rulemaking to be stricken from the complaint.

After allowing the other amendments, the court turned to Sierra Club's motion for summary judgment or preliminary injunction on its amended complaint. On the merits of the substantive challenge to the 1983 amendments to the regulations, the district court ruled: (1) there was a rational basis for the five-acre threshold impact contained in 43 C.F.R. § 3809.1–3 and its purpose of preventing unnecessary or undue degradation under section 302(b) of the Federal Land Policy Management Act, 43 U.S.C. § 1732(b); (2) the regulations were not arbitrary or capricious under the Administrative Procedure Act; and (3) section 302(b) did not require prior review of all mining operations in order to ensure prevention of unnecessary or undue degradation. However, with respect to the procedural challenges to the 1983 amendments to the regulations, the court held the amendments to 43 C.F.R. § 3809 invalid for failure to include a sufficient environmental assessment and a subsistence evaluation.[3]

On December 9, 1987, the appeal was reargued and resubmitted to this court. On resubmission Sierra Club alleges the district court erred in three respects: First, Sierra Club reaffirms its contention on the original appeal that systematic approval of five-acre Notice mine operations is a major federal action which violates the National Environmental Policy Act. Second, it is argued that the action against the 1980 rulemaking is not barred by the statute of limitations. Finally, Sierra Club contends that even though the district court correctly held the 1983 amendments invalid, it erred in delaying the effective date of invalidity until November 15, 1988. In short, it is argued that Sierra Club is entitled to immediate relief on the invalidity question.

## 2. ANALYSIS

### (a) Jurisdiction

We first review the question of appellate jurisdiction over the November 6, 1987, order of the district court. After this case was first argued and submitted on August 6, 1987, we remanded to the district court to allow it to address the question of whether Sierra Club's challenge to Notice mining included an attack on the validity of the regulation, 43 C.F.R. § 3809.1–3. On remand, the district court ruled on that question as well as a number of other questions which were presented when Sierra Club amended its complaint. The November 6 order addressed each of these.[4] We must therefore decide whether we have jurisdiction over issues appealed from the November 6, district court's order which are different from the issue we directed on remand.

Our authority to remand the case is governed by 28 U.S.C. § 2106 which provides:

2. Prior to the 1983 amendments, mines disturbing five acres or less that were located on public lands withdrawn from further mineral entry were considered "special category" lands and were treated as "Plan" operations, which require BLM approval, rather than Notice mines which do not require prior approval. The 1983 amendments removed these operations from special category status.

3. Because of the invalidation of § 3809, the district court directed that certain mines under the Notice regulation would then be operated under the Plan system. However, to protect the existing interests of those persons mining under the Notice system, the court deemed the regulations valid until November 15, 1988, and thereby allowed BLM sufficient time to develop the increased applications for Plan systems. *See* Part 2(d), *infra*.

4. The order also includes two minute orders from chambers entered November 12, 1987, which clarify the order the district court filed November 6.

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

Once remanded, the district court was free to rule not only on the issue directed in the remand, but other issues as well so long as our mandate did not direct to the contrary. *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986). Thus, the remand could include allowance of additional pleadings or amendments varying or expanding the issues. *Id.*

Our mandate is broadly written.[5] It contains no language which expressly or impliedly foreclosed the district court from addressing the additional issues it did in its November 6 order. The district court therefore did not err in addressing issues other than the one indicated in our order of remand. Accordingly, we have appellate jurisdiction to review the issue originally presented [6] and those issues appealed [7] by Sierra Club [8] from the district court's November 6 order.

(b) Major Federal Action

Section 102(2)(c) of the National Environmental Policy Act ("NEPA") requires federal agencies to file an environmental impact statement ("EIS"), 40 C.F.R. §§ 1502.-1–.25, before undertaking "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c).[9] In determining whether to prepare an EIS, the federal agency must evaluate the proposal. 40 C.F.R. § 1501.4(a). If the proposal is believed to not require an EIS, the agency may prepare an environmental assessment ("EA") to determine whether a full EIS is necessary. 40 C.F.R. § 1501.4(b)–(c). If the proposed action will not significantly affect the environment, the agency can issue a finding of no significant impact. 40 C.F.R. § 1508.13. *See Conner v. Burford*, 836 F.2d 1521, 1526 (9th Cir.1988). If an EIS is issued, it must contain, *inter alia*, statements considering alternatives, a full and fair discussion of significant environmental impacts, a discussion on mitigation measures and an evaluation of cumulative impacts. *See* 40 C.F.R. §§ 1502.1–.25; *Oregon Natural Resources Council v. Marsh*, 832 F.2d 1489, 1493 (9th Cir.1987).

Whether a federal agency is required to follow NEPA, and thus its regulations, depends upon the magnitude of the project. The agency activity must constitute "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c). "Major Federal actions" include "actions with effects that

---

**5.** Our remand order, entered August 28, 1987, stated as follows:

This case is remanded to the district court for a period of 60 days with instructions to reopen the proceedings. The district court is requested to permit the parties to consider the agency record and to address the validity of the mining regulation itself as set forth in 43 C.F.R. § 3809.1–3.

We request that the district court and the parties give expedited attention to this remand so that the appeal may be heard at Seattle, Washington during the court week of December 7, 1987, as consolidated in accordance with the order filed August 5, 1987.

**6.** This issue is whether systematic approval of Notice mine operations constitutes major federal action. *See* Part 2(b), *infra*.

**7.** These two issues are whether the challenge to the 1980 rulemaking is barred by the statute of limitations and whether immediate relief on the

finding of invalidity of the 1983 amendments was required. *See* Parts 2(c) and 2(d), *infra*.

**8.** Sierra Club filed a notice of appeal from the district court's November 6 order. Because of our jurisdiction under 28 U.S.C. § 2106, we view this as unnecessary. The defendants and intervenors did not file a notice of appeal. If they wish to appeal from a later or the final judgment, once entered, they may do so at that time.

**9.** By Executive Order, the Council on Environmental Quality issued regulations to federal agencies for implementing NEPA. Exec. Order No. 11991, 42 Fed.Reg. 26,967–68 (1977). The regulations are binding on all federal agencies and provide guidance to the courts for interpreting NEPA requirements. 43 Fed.Reg. 55,978 (1978). *See* 40 C.F.R. §§ 1500.1–1508.28 (1986).

may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. "Actions" include: failure to act by responsible officials where that failure is subject to review; new and continuing activities; new or revised agency rules, regulations, plans, policies or procedures; or agency overview of private action. *Id.* "Actions" do *not* include general revenue funding assistance with no agency control over the use of the funds, or *"bringing judicial or administrative civil or criminal enforcement actions."* 40 C.F.R. § 1508.18(a) (Emphasis added).

Sierra Club argues BLM's review of Notice mines under 43 C.F.R. § 3809.1–3 and BLM's substantive review [10] constitutes "regulation" and "approval" which is "major Federal action" under NEPA [11] thereby requiring an EA on every proposed Notice mine. The district court denied Sierra Club's motion for partial summary judgment for a permanent injunction on this issue. The district court held that BLM's review of Notice mines was not "major

Federal action" thereby requiring an EA for compliance with NEPA.

Since this issue is based upon the premise that the district court applied an erroneous rule of law, we review the question *de novo. United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

NEPA compliance is required only where there is "major Federal action" which significantly affects the environment. 42 U.S. C. § 4332(c); *see Cady v. Morton,* 527 F.2d 786, 793 (9th Cir.1975). Since BLM's action here involves a federal regulatory scheme, the action is clearly "federal." 40 C.F.R. § 1508.18(b). Also, "actions" include "regulated" projects. *See* 40 C.F.R. § 1508.18(a). This includes the mining operations here even though they are run by private individuals rather than a government agency. The "significantly affects" requirement is not defined by regulation. But, this requirement is met if the proposed project *may* significantly degrade

---

**10.** BLM reviews a Notice mine letter by the checklist set forth in the *BLM Manual* and the *Alaska State Handbook,* with substantive review consisting, *inter alia,* of the following:

(1) BLM determines the mining claim and land status. In certain circumstances where the status of the claim is presently under appeal, BLM sends the miner a "decision" limiting him to "casual" operations until the appeal is decided. In other circumstances, a miner proposing to operate without a valid claim on lands not open to current entry receives a letter notifying him that if he proceeds he "will be ... subject to a trespass action."

(2) BLM conducts a cultural and paleontological inventory and, if any potential conflicts with cultural resources are discovered, notifies the miner that the operation "may" disturb such resources in violation of statutes and regulations protecting the resources. BLM informs the miner that if such a violation in fact occurs, he will be issued a notice of noncompliance and may be subject to criminal penalties. If possible, BLM suggests ways for the miner to minimize or avoid impacts on cultural and paleontological resources.

(3) If in processing the notice, BLM becomes aware of potential conflict with threatened or endangered species, BLM notifies the miner of this possibility and that it may result in a criminal penalty.

(4) If activities described in the notice indicate the presence of eagles, BLM notifies the

miner that there is a possibility of significant adverse impact on eagles and that such impact, should it occur, would result in a notice of noncompliance and possible prosecution.

(5) If the notice indicates that nuclear or hazardous materials will be used, BLM sends the miner a letter informing him of the need for authorizing documents. The letter warns that if a later field inspection shows that no such documents have been obtained, BLM will issue a notice of noncompliance.

(6) BLM reviews the notice to determine whether the operation may affect the Coastal Zone; if so, the miner is informed that State approval may be necessary.

(7) BLM determines whether the miner, after disturbing adjacent lands under a prior notice, has complied with reclamation. If he has not, he is informed that his current notice is "incomplete" for this reason.

(8) If in processing the notice BLM becomes aware that subsistance uses may be restricted, BLM informs the miner of this possibility and states that significant restriction would be deemed undue degradation.

**11.** Under the Alaska National Interest Lands Conservation Act ("ANILCA"), if an EIS is required (or an EA is prepared) under NEPA, the EIS (EA) must also consider the effect of subsistence uses, i.e., include a subsistence evaluation ("SE") under section 810 of ANILCA. 16 U.S.C. § 3120(b).

some human environmental factor. *See City of Davis v. Coleman,* 521 F.2d 661, 673 (9th Cir.1975).

Sierra Club argues that BLM's processing of Notice mines pursuant to the five-acre rule in 43 C.F.R. § 3809.1–3 amounts to major federal action triggering NEPA and ANILCA compliance in the form of EA's and SE's for each proposed mine. As indicia of major Federal action, Sierra Club points to BLM's extensive review involvement of Notice mines, BLM's policies and practices in implementing Notice regulations, the compliance inspections which BLM conducts, the approval BLM grants and its letter to the operator to this effect, NEPA's broad mandate obligating compliance to the fullest extent possible and the Federal Land Policy and Management Act's, 43 U.S.C. § 1732(b), charge to take any action necessary to prevent unnecessary or undue degradation.[12]

■ We believe BLM does not sufficiently involve itself in the approval process to render Notice mine review a major Federal action requiring NEPA compliance. Without NEPA's applicability, an EA on each Notice mine is not required.

In *State of Alaska v. Andrus,* 591 F.2d 537, 541 (9th Cir.1979), we reviewed the contention that the Secretary of the Interior engaged in major Federal action under NEPA by failing to exercise his authority to regulate the killing of wolves on federal land. We found that the Secretary's nonexercise of authority did not constitute a major action triggering the NEPA requirement that an EIS be issued. *Id.* at 542. In making this determination, we looked to the nature of the federal funds used and the extent of federal involvement. We also pointed out that the decisions on federal action are not consistent between the circuits:

The Ninth Circuit, however, has not been receptive to arguments that impact statements must accompany inaction, or actions that are marginally federal. Where federal funding is not present, this court has generally been unwilling to impose the NEPA requirement.

*Id.* at 541.

Consistent with *Alaska,* we believe BLM's review of Notice mines is only a marginal federal action rather than a major action. There is no allegation that Notice mine operators receive federal funding. BLM's "systematic approval" of Notice mines is discretionary. BLM cannot require approval before an operation can commence developing the mine. 43 C.F.R. § 3809.1–3(b). BLM's obligation to monitor compliance with statutory and regulatory requirements to deter undue degradation is insufficient. *San Francisco Tomorrow v. Romney,* 472 F.2d 1021, 1025 (9th Cir.1973). The right of BLM to issue notices of noncompliance is also insufficient action. *Molokai Homesteaders Cooperative Association v. Morton,* 506 F.2d 572, 580 (9th Cir.1974). While BLM does possess the authority to commence enforcement proceedings, *see* 43 C.F.R. § 3809.3–2, the CEQ has established that actions "*do not include* bringing judicial or administrative civil or criminal enforcement actions." 40 C.F.R. § 1508.18(a) (emphasis added). *See also Alaska,* 591 F.2d at 537.

We hold that as a matter of law BLM's approval of Notice mines without an EA does not constitute major Federal action within the scope of NEPA, 42 U.S.C. § 4332(2)(c), or the CEQ implementing regulations, 40 C.F.R. § 1508.18. Neither BLM's approval process nor regulatory involvement is sufficient to trigger NEPA or ANILCA application.

---

12. In promulgating the placer mining regulations, BLM did prepare an EIS before adopting the regulatory scheme. In challenging the Notice mine regulations, Sierra Club does not contest the sufficiency of this EIS as used to make the distinction between Plan, Notice and Casual mines. The district court found that BLM did not act arbitrarily and capriciously in making these distinctions based upon the EIS filed. Si-

erra Club does not argue on appeal that the district court erred in finding the regulations were not arbitrary and capricious. We therefore find Sierra Club's argument incongruous in this regard—for it is inconsistent to allege Notice mines require an EA when what constitutes a Notice mine was determined by an EIS, the sufficiency of which was not challenged.

(c) Statute of Limitations

The district court struck from Sierra Club's second amended complaint the procedural challenges to the 1980 rulemaking, finding these claims were barred by the statute of limitation. Since this issue involves a question of law, we review it *de novo*. *In re Swine Flu Products Liability Litigation*, 764 F.2d 637, 638 (9th Cir.1985).

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, governs judicial review of agency actions. Section 702 grants standing to challenge an agency action to anyone adversely affected by such action, except where the statute under which the action was taken precludes judicial review or where the action is committed to agency discretion by law. 5 U.S.C. § 701(a); *see also Wallace v. Christensen*, 802 F.2d 1539, 1556 (9th Cir.1986) (en banc) (Hall, J. concurring in the judgment). NEPA itself authorizes no private right of action. *See Noe v. Metropolitan Atlanta Rapid Transit Authority*, 644 F.2d 434, 439 (5th Cir.1981). But, the APA provides for judicial review of agency action. 5 U.S.C. § 702. Neither NEPA nor the APA contain a specific statute of limitation. The question therefore is whether a general statute of limitation applies to bar Sierra Club's procedural challenges to the 1980 rulemaking.

The civil action statute of limitation provides:

> Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues....

28 U.S.C. § 2401(a). Previously, we have suggested, without holding, that § 2401(a) applies to the APA. *Lee v. United States*, 809 F.2d 1406, 1409 n. 2 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988). We believe this suggestion to be correct. A NEPA challenge is brought under the APA against the federal agency and its officers. Such an action is against the United States. By its terms, section 2401(a) applies to "every civil action commenced against the United States." As a general statute of limitation, it should apply to actions brought under the APA which challenge a regulation on the basis of procedural irregularity. On this basis Sierra Club's claim for procedural deficiencies is time-barred.

To get around application of § 2401(a), Sierra Club offers two alternative arguments. The first is that the original complaint encompassed the claim alleging procedural irregularities. We disagree. The amended complaint of February 18, 1986 challenged the Notice regulations on the basis that they were *applied* unlawfully by BLM. The complaint based its legal theory upon "a matter of policy and practice." There is no allegation of invalidity based upon the procedural adoption of the regulations. The claim for procedural irregularities was not encompassed by the original amended complaint.

Secondly, Sierra Club argues the procedural challenge to the 1980 rulemaking relates back to the original complaint under Fed.R.Civ.P. 15(c). We reject this argument also. Under Rule 15(c),[13] an amendment relates back to the time of the original complaint if the claim arose out of the same conduct, transaction or occurrence.

In *Santana v. Holiday Inns, Inc.*, 686 F.2d 736 (9th Cir.1982), we construed Rule 15(c) to allow a claim for interference with employment relations to relate back to a former claim for slander. *Id.* at 739. The *raison d'etre* for relation back is that the opposing party is already on notice of the action and hence no prejudice results:

> Once the defendant is in court on a claim arising out of a particular transaction or set of facts, he is not prejudiced if another claim, arising out of the same facts, is added.

*Id.* The same reasoning applies for lack of personal jurisdiction, expiration of the stat-

---

**13.** Fed.R.Civ.P. 15(c) provides, in relevant part: Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

ute of limitation or a different theory of recovery:

> The existence of an affirmative defense to the original complaint, such as lack of personal jurisdiction or the running of the statute of limitations, has no effect on whether the original pleading put the opposing party on notice of the substance of what is sought to be added by amendment.

> \* \* \* \* \* \*

> It is also the prevailing view that an amendment which changes the legal theory on which a action initially was brought is of no consequence to the question of relation back if the factual situation out of which the action arises remains the same and has been brought to the defendant's attention by the original pleading.

*Id. Cf, Schiavone v. Fortune,* 477 U.S. 21, 28–32, 106 S.Ct. 2379, 2384–86, 91 L.Ed.2d 18, 27–29 (1986).

However, *Santana* does not control here. This is because Sierra Club's amendment goes beyond alleging a different theory of recovery. It alleges a new claim for relief. The original challenge based on BLM's "policy and practice" requires evidence showing how BLM conducts Notice mine review. The new claim alleging invalidity of the Notice regulations requires evidence of the procedures used in adopting the regulations. The original claim was premised on a theory of unlawful application of the five-acre rule. The new procedural challenge Sierra Club attempted to add is based upon a theory of invalidity of the regulations as adopted. In short, the procedural challenge does not arise out of the same conduct or transaction. It arises out of BLM's conduct in adopting the regulations rather than BLM's "policy and practice" in Notice mine review. Because of this, BLM did not have notice of the substance of what was sought to be added by the amendment. Rule 15(c) does not and should not allow an amended complaint to relate back where the conduct, transaction or occurrence alleged is different. Other-

wise, claimants such as Sierra Club could challenge regulations at a much later time, e.g., when administered by the federal agency, rather than when adopted.

The regulations at issue here were published in November, 1980. Sierra Club sought to amend its complaint to include a challenge to the procedural deficiencies in adoption of the regulations in October of 1987. More than six years elapsed between the time the alleged procedural deficiencies occurred and the time of Sierra Club's amended complaint. Under § 2401(a), the procedural challenge to the Notice regulations are time-barred.

### (d) Relief Granted

■ With respect to the 1983 amendments to 43 C.F.R. § 3809, *see* 48 Fed.Reg. 8816 (1983), the district court found them to be procedurally defective and therefore invalid.[14] Because of this defect, the district court ordered certain mines under the Notice regulations to revert to treatment under the Plan regulations. No party contests this holding, but Sierra Club contests the form of relief granted by the district court insofar as it deferred the effective date of the invalidity to November 15, 1988. This date was chosen to allow miners who had already commenced operations the opportunity to complete them and allow BLM time to accommodate the resulting increase in demand for EA's the following season.

In fashioning this remedy, the district court in effect granted two forms of remedy—declaratory relief in that the amendments were deemed invalid, and injunctive relief in deferring the effective date of the invalidity. The declaration of invalidity involves a question of law which would be subject to *de novo* review. *See United States v. Washington,* 759 F.2d 1353, 1356–57 (9th Cir.1985) (en banc). But, since the deferral of invalidity is analogous to injunctive relief, and it was the deferral issue which was appealed, we will apply an abuse of discretion standard. *See Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846, 849 (9th Cir.1985); *SEC v. Gold-*

---

**14.** BLM did not take issue with the district court's invalidation of the 1983 amendments on procedural grounds. Hence, we do not review the merits of this issue.

*field Deep Mines Co. of Nevada,* 758 F.2d 459, 465 (9th Cir.1985).

We find the district court did not commit reversible error in delaying the date of invalidity to the 1983 amendments of the Notice mine regulations. The district court was presented with conflicting interests and a difficult situation to resolve. Sierra Club amended its complaint in the ninth inning. The miners had already taken measures to proceed with mining operations. The declaration of invalidity placed the weight of BLM's actions on the shoulders of the miners who could only be expected to rely on the regulations in place. The district court molded its decree to meet the exigencies of the situation before it. The deferral of invalidity until November 15, 1988, was the best course available to remedy the interests and injuries involved.

APPEAL NO. 87–4132

1. FACTS AND PROCEEDINGS BELOW

This appeal concerns Sierra Club's separate challenge to aspects of Plan mining operations. Plan mines disturb more than five surface acres per year and require approval by BLM before mining can begin. 43 C.F.R. §§ 3809.1–3 to 1–6. Approval requires review through an environmental assessment ("EA") under NEPA, 43 C.F.R. § 3809.2–1, and a subsistence evaluation ("SE") under § 810 of ANILCA, 16 U.S.C. § 3120. The purpose of approval is to minimize the adverse environmental impacts.

Sierra Club's original February, 1986 complaint included the allegation that the EA's and SE's prepared by BLM for approval of Plan mines were inadequate and did not fully comply with NEPA and ANIL-CA. Sierra Club moved for an injunction on this issue to stay the mining operations until compliance was attained. In April of 1986, BLM and Sierra Club reached a settlement on this issue. Pursuant to a stipulation, BLM agreed to prepare EA's and SE's which complied with NEPA and AN-

ILCA before approving any Plan mines for the 1986 mining season, while Sierra Club agreed to withdraw its motion for an injunction.

Later, it appeared to Sierra Club that the EA's and SE's remained inadequate because they failed to consider: alternative mining methods, cumulative impacts, site-specific impacts, and the adequacy of mitigation measures. Sierra Club then moved to compel compliance with the stipulation. On November 21, 1986, the district court denied the motion on the grounds of mootness and failure to exhaust administrative remedies. Sierra Club then moved for reconsideration of the denial and asked for a permanent injunction mandating the legal requirements of future EA's and SE's. On June 23, 1987, the district court reaffirmed its November 21 decision and denied the requested injunctive relief for failure to exhaust administrative remedies. Sierra Club appeals the denial of these motions.[15]

2. ANALYSIS

(a) Motion to Comply

■ The stipulation entered into on the adequacy of the EA's and SE's expired by its own terms on December 31, 1986. Sierra Club moved for compliance in July. By that time, only a few weeks remained in the 1986 mining season. This rendered the motion moot at nearly the same time it became ripe for decision. If the district court would have ordered compliance, by the time Sierra Club exhausted the administrative remedies, the season would have been over. Now, regardless of the expiration of the mining season, the stipulation has expired by its terms.

Sierra Club argues compliance was required because effective relief can still be rendered. By ordering BLM to prepare adequate EA's and SE's, Sierra Club contends necessary reclamation can be made

---

**15.** We read Sierra Club's brief as appealing the denial of its motion for compliance and motion for a permanent injunction. We do not review the merits of the adequacy of the EA's and SE's that are the subject of the complaint because the district court did not review the merits of this claim. However, the district court did com-

ment on the adequacy of the EA's. While Sierra Club states that the district court "agreed with the plaintiffs about the merits," we believe the merits were not ruled upon. Once the merits are ruled upon, the parties may then seek review of the case in that respect.

on the approved 1986 Plan mines which will halt the continuing adverse impacts resulting from those illegally approved mining operations.

In this circuit, the preeminent law with respect to mootness in a NEPA claim was set forth in footnote 1 of *Columbia Basin Land Protection Association v. Schlesinger*, 643 F.2d 585 (9th Cir.1981). In *Columbia Basin*, we held that a suit by landowners to enjoin construction of a power transmission line for failure of the EIS to meet the requirements of NEPA was not mooted because the line had already been built and was in operation at the time of the appeal. *Id.* at 591 n. 1. We found that if the EIS was inadequate or the decision to build the line was arbitrary or capricious, the case was not moot since the remedy of removal of the line could have been ordered. *Id.*

We believe *Columbia Basin* is sufficiently distinguishable. The remedial action available in *Columbia Basin* is not available in this context. There, removal of the power line from one route and construction by another route was an available remedy which could correct the unlawful decision. Here, even if we assume BLM's decision making process is unlawful, no adequate remedy exists. Unlike a power transmission line, a completed mining operation cannot be moved. The impacts of the Plan mines are not remediable since we cannot order that the Plans be "unmined." *See Friends of the Earth v. Bergland*, 576 F.2d 1377 1378–79 (9th Cir.1978) (challenge to approval of exploratory drilling for failure to comply with NEPA was moot where all work on the project had ceased).

Even if we were to assume we had the authority to order reclamation efforts by the miners which were not included in the miners' Plan as approved, the remedy is inconsistent with the denial of the motion to compel compliance which is the issue on this appeal. That is, in *Columbia Basin*, ordering compliance with NEPA could, by that fact, result in the power line being relocated. Here, ordering compliance with the stipulation will not result in reclamation. Since we cannot require BLM to disapprove Plan operations which have already been mined, ordering compliance with the stipulation would have no effect. Similarly, we cannot reasonably foresee how *compliance with the stipulation* will correct future conduct. *See Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Plan mines for the 1987 season involve compliance issues separate from the scope of the stipulation. Therefore, the district court did not err in denying Sierra Club's motion to compel compliance with the stipulation.

(b) Motion for Permanent Injunction

In its order of June 23, 1987, the district court dismissed Sierra Club's challenge to post–1986 Plans for lack of ripeness and failure to exhaust administrative remedies. In this, Sierra Club alleged that as a matter of policy and practice, BLM failed to satisfy NEPA and ANILCA by preparing inadequate EA's and SE's for Plan mine operations. Sierra Club asked for a permanent injunction on these counts which would mandate the legal requirements in future EA's and SE's. This injunction was denied. Sierra Club appeals the denial.

The basis for injunctive relief is irreparable injury and inadequacy of legal remedies. This requires a court to balance the competing claims of injury and the effect on each party of granting or withholding of the requested relief. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987). Obtaining a preliminary injunction requires a showing of irreparable injury and likelihood of success on the merits. However, in the context of environmental injury, irreparable damage is not presumed in evaluating agency action. *Id.* 107 S.Ct. at 1404. The standard for a preliminary injunction is essentially the same as for a permanent injunction except "likelihood of success on the merits rather than actual success" must be shown.[16] *Id.* at 1404 n. 12.

16. We point out that this standard as stated by the Supreme Court is incongruous in this respect. For when actual success on the merits is shown, the inquiry is over and a party is entitled

■ Sierra Club argues it is entitled to have the court order BLM to conform future EA's and SE's to the requirements of NEPA and ANILCA. In this, Sierra Club asserts that it is entitled to relief as a matter of law because BLM has an established policy and practice of issuing EA's and SE's for mining operations which do not consider alternatives or site-specific impact analysis. *See* 42 U.S.C. § 4332(C)(iii); 40 C.F.R. § 1508.9 (an environmental assessment shall include brief discussions of alternatives of the environmental impacts of the proposed action). To establish the policy and practice, Sierra Club points to past EA's which failed to consider alternatives, a statement in the BLM Manual[17] and the litigation position of BLM in that it can comply with the environmental statutes in the future.

In determining whether a claim is ripe for review, we must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). We will withhold review until "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148–49, 87 S.Ct. at 1515.

We fail to see how BLM's actions have presented an issue fit for judicial decision. In this record, we find nothing to show what BLM's policy will be in future years. It would be a mistake for us to assume that because an EA was inadequate in the past, BLM will not comply with NEPA in the future. The statement in the BLM Manual which assumes the operator's best conduct is insufficient to establish a policy. The adequacy of the EA's involves a question of fact, and facts are not found in this record.

Our review of Sierra Club's contentions would be assisted by a factual record.

"*Any party* ... aggrieved by a decision" of the BLM has the right to pursue an administrative appeal up through the Board of Land Appeals. 43 C.F.R. § 3809.4(f) (emphasis added). Under the administrative review procedure, Sierra Club can present facts which show a NEPA violation. Once this procedure is exhausted, a record for review would be established. We presently have no reason to believe judicial review is necessary. Should we not assume that the Board of Land Appeals will thoroughly review the adequacy of the EA's? If an EA is shown to be inadequate, the Board will order the appropriate remedy and Sierra Club will be granted relief without resorting to judicial review.

Sierra Club's claim is not ripe for judicial review. When an inadequate EA is contested as a matter of fact, review should then proceed through the administrative process and a question of adequacy can be resolved. With the claim ripe for review and the administrative appeals exhausted, Sierra Club can then seek judicial relief. Until then, we will withhold review. Because actual success on the merits was not shown, the district court did not err in denying permanent injunctive relief.

APPEALS NO. 87–4094 AND 87–4209

Sierra Club's complaint also alleged BLM violated NEPA and ANILCA by failing to prepare EA's addressing the cumulative impacts of Plan mines in four specific watersheds: the Birch Creek, Beaver Creek, Fortymile River, and Minto Flats watersheds. The district court addressed this cumulative impact question separately from the Notice mine regulation questions.

As facts the district court found that the four watersheds had good water quality before mining was conducted. Three of the rivers were designated national wild and scenic rivers. 16 U.S.C. § 1274. After the surge in placer mining, the water quality was substantially degraded. The degra-

---

to relief as a matter of law irrespective of the amount of irreparable injury which may be shown.

**17.** The BLM Manual § 3809.21(b)(1) states:

"The BLM's EA will not consider alternative mining or milling technologies, but assumes that the operator is proposing to use the best reasonably and economically available technology appropriate for these purposes."

dation, in the form of increased sediment, resulted in a load which exceeded state water quality standards. The district court found this degradation evidence to be "uncontroverted." The degradation resulted in reduced fish population and deterred recreational use. In this, the district court found that while individual mine degradation may have been less significant, the cumulative effect was more significant. The court therefore entered partial summary judgment for Sierra Club and ordered BLM to prepare an EIS which addressed the cumulative impact and effect on subsistence uses of placer mines.[18] After balancing the equities, the court allowed the 1987 mining season to go forward but enjoined BLM from approving any placer mines in the four watersheds until the EIS was prepared.[19] The court then ordered retained jurisdiction to review the adequacy of the EIS's. *Sierra Club v. Penfold,* 664 F.Supp. 1299, 1306 (D. Alaska 1987).

Specifically, BLM was ordered to prepare an EIS for the Fortymile River which evaluated the cumulative impact of all placer mines in the watershed. With respect to Minto Flats, BLM was ordered to evaluate the cumulative impact of placer mining on subsistence activities as required by § 810 of ANILCA. This requirement was also applied to Birch Creek in addition to a cumulative impact assessment, both of which were to be included in a comprehensive EIS on the watershed. For Beaver Creek, BLM was ordered to evaluate cumulative impacts to determine whether an EIS was necessary for this watershed. Pursuant to these orders, BLM was enjoined from approving any placer mining Plan of operations under 43 C.F.R. § 3809.1–4 after October 1, 1987, until compliance with the orders. But, on each watershed the order provided that any miner, upon colorable showing that his operation did not

contribute to the cumulative environmental impacts, could move the court for limited intervenor status and obtain individual relief from the injunction. *Id.* at 1312–16.

In Case No. 87–4094, the Miners appeal the district court's entry of summary judgment and the equitable relief granted in the order on cumulative impacts. In Case No. 87–4209, BLM appeals the summary judgment insofar as the *scope* of the injunctions included initial district court review of the EIS's to determine their adequacy under NEPA and ANILCA without first requiring exhaustion of administrative remedies on the question of the adequacy of the studies. These two appeals are addressed separately.

## APPEAL NO. 87–4094

The Miners contest both the entry of summary judgment and the injunctive relief granted to Sierra Club.

### 1. ANALYSIS

#### (a) Summary Judgment

We review a district court's grant of summary judgment *de novo.* Reviewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986); *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). "Evidence raising a genuine issue of material fact is that which is enough to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Star–Kist Foods, Inc. v. P.J. Rhodes and Co.,* 735 F.2d 346, 348 (9th Cir.1984) (citations omitted).

#### (b) Cumulative Impacts

■ NEPA requires that where several actions have a cumulative or synergistic

---

**18.** BLM conceded that the EA's were inadequate in analyzing cumulative impacts. In this, BLM has agreed to go farther than an EA and will prepare EIS's on the four watersheds. BLM therefore has agreed to comply with the injunctive order.

**19.** While the EIS included operations conducted under Notices, 43 C.F.R. § 3809.1–3, the Notice

operations were not affected by the injunction. But since Sierra Club argued the Notices were major federal actions as part of a separate appeal, No. 87–3597, they could have been included in the injunction in this appeal had we ruled Notice mining triggered NEPA compliance. *See Sierra Club v. Penfold,* 664 F.Supp. at 1306 n. 12.

environmental effects, this consequence must be considered in an EIS. *Kleppe v. Sierra Club*, 427 U.S. 390, 410, 96 S.Ct. 2718, 2730, 49 L.Ed.2d 576 (1976); *Save the Yaak Committee v. Block*, 840 F.2d 714, 721 (9th Cir.1988); 40 C.F.R. § 1508.7.

The Miners argue that there are factual disputes regarding the existence of environmental harm resulting from placer mining operations, and that entry of summary judgment requiring comprehensive analysis pursuant to NEPA and ANILCA was inappropriate. The Miners cite declarations of individual miners in which they question whether their operations have caused the allegaed environmental problems. Additionally, they argue that the cited studies are outdated and do not reflect the present efforts taken by miners to improve the environment.

Sierra Club cites scientific studies, conducted by the Alaska Department of Environmental Conservation, the Bureau of Land Management, the Alaska Department of Fish and Game, and the U.S. Fish and Wildlife Service, wherein environmental problems are clearly linked to placer mining operations. While it may be true that individual miners do not think that their operations adversely affect the environment, the scientific studies appear to demonstrate otherwise. The Miners' present efforts to improve the environment do not necessarily prevent their operations from adversely affecting the environment, especially considering the problem of cumulative impacts. Since the difference in opinion which exists regarding the cumulative effects of placer mining on the environment does not raise a genuine issue of material fact, we will not disturb the order granting summary judgment.

(c) Equitable Relief Granted

 The Miners argue that the district court abused its discretion in enjoining approval of additional Plan mines until the cumulative impacts were assessed.

A district court has broad discretion in granting preliminary injunctive relief and we will reverse for abuse of discretion only where the decision is based on erroneous legal standards or clearly erroneous factual findings. *Northern Alaska Environmental Center v. Hodel*, 803 F.2d 466, 471 (9th Cir.1986).

NEPA and ANILCA require that where an action is related to other actions which produce significant cumulative impacts, the EIS must assess this. BLM initially failed to do so in the four watersheds in approving Plan mines. The facts also show that the cumulative effect of the mines was to degrade water quality, cause aesthetic degradation and reduce recreational use.

Given NEPA's legal standard or the finding of facts themselves, injunctive relief was warranted. Cumulative impacts in the watersheds were more than likely—they had in fact occurred. Because of the discretion allowed in fashioning equitable remedies, and the cumulative impacts shown to exist, the district court did not err in enjoining approval of Plan mines until adequate EIS's were prepared.

APPEAL NO. 87–4209

 BLM appeals the summary judgment only as to the *scope* of injunctive relief granted, in that the district court retained jurisdiction to review the adequacy of the cumulative NEPA and ANILCA studies BLM was to prepare.

Under BLM's proposal, once the cumulative studies are completed, the injunction would be dissolved and BLM could resume processing and approving Plan mine operations. Any question regarding the *adequacy* of the cumulative studies would be addressed first through the existing administrative appeals process on a mine-per-mine basis. Thus, BLM's proposal would allow BLM and the Board of Land Appeals to evaluate the *adequacy* of the cumulative studies, rather than the district court. BLM's primary argument for modifying the injunction to allow BLM to evaluate the adequacy of the cumulative studies in the first instance on a mine-per-mine basis is that there must be exhaustion of administrative remedies.

BLM argues that the adequacy of the cumulative impact studies should be reviewed through the existing administrative

appeals process in the context of BLM's approval of a particular Plan of operations. By following this process, the court would place the burden back on the party challenging the adequacy of the EIS, where BLM contends it must be.

Whether or not we should require exhaustion of administrative remedies in a particular case depends on whether exhaustion would promote the policies underlying the doctrine:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have the opportunity to correct its own errors, to afford the parties and the courts the benefit of its own experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). Additional factors we have considered include the adequacy of the administrative remedy, whether the issue presents a factual or legal question, the need for an administrative record, the efficiency of an administrative versus a judicial proceeding, and whether the administrative process would obviate unnecessary judicial proceedings. *See Aleknagik Natives Limited v. Andrus*, 648 F.2d 496, 499–500 (9th Cir. 1980).

BLM argues that evaluating the adequacy of the cumulative studies, as they apply to a particular Plan of operations, is more desirable than having the district court evaluate their adequacy in the abstract. This issue presents the difficult problem of determining whether the adequacy of the cumulative studies presents a factual question, best decided in the context of a particular plan of operations, by the agency with expertise, based on a factual record; or, alternatively, a legal question, best decided by the judiciary, as a question of statutory interpretation of NEPA and ANILCA.

It is not clear to us that the cumulative studies should be evaluated by BLM in the context of a particular Plan of operations. The district court's injunctions directed BLM to evaluate the cumulative impacts of approved operations and other operations in the area that may be significant. The Order also indicates BLM is to consider cumulative impacts in a context *broader* than a particular Plan of operations. Additionally, the adequacy of the administrative remedy is questionable, given that Sierra Club would have to pursue appeals for each mine individually.

We hold the district court did not abuse its discretion in retaining jurisdiction to review the adequacy of the EIS. Our decision in this respect is consistent with *Northern Alaska Environmental Center*, 803 F.2d at 471, where we upheld an injunction until *the court* evaluated the cumulative studies. The district court can review the adequacy of the EIS's with respect to their assessment of cumulative impacts without first requiring administrative review.

CONCLUSION

In Appeal No. 87–3597, we hold we have jurisdiction to review the district court's November 6, 1987 order and that BLM's approval of Notice mines is not major federal action. Also, we hold the procedural challenge to the Notice regulations adopted in 1980 are time-barred by 28 U.S.C. § 2401(a) and that the district court did not err in delaying the effective date of invalidity on the 1983 amendments.

In Appeal No. 87–4132, we hold Sierra Club was not entitled to permanent injunctive relief at this point in the proceedings and that the motion to comply with the stipulation was properly dismissed as moot.

In Appeals No. 87–4094 and 87–4209, we hold Sierra Club was entitled to summary judgment and there was no abuse of discretion in enjoining approval of Plan mines until the cumulative impacts caused in the four watersheds were assessed. Also, we hold the district court was entitled to retain jurisdiction to review the adequacies of the studies BLM was ordered to prepare without first requiring administrative review.

Therefore, IT IS ORDERED:

The district court's November 6, 1987 order on remand is AFFIRMED; the dis-

trict court's November 21, 1986 Memorandum and Order and June 23, 1987 Amended Memorandum and Order are AFFIRMED; the district court's May 14, 1987 Memorandum and Order on cumulative impact claims and May 28, 1987 Second Memorandum and Order on cumulative impact claims and July 21, 1987 injunctions are AFFIRMED. Each party shall bear its own costs.