**MOBIL EXPLORATION & PRODUCING U.S., INC., Plaintiff,**

v.

**Bruce BABBITT, Secretary, United States Department of the Interior, et al., Defendants.**

**Civil Action No. 94–387 SSH.**

United States District Court, District of Columbia.

Dec. 22, 1995.

L. Poe Leggette, Jackson & Kelly, Washington, DC, for Plaintiff.

Caroline M. Zander, Environmental and Natural Resources Division, General Litigation Section, U.S. Dept. of Justice, Washington, DC, for Defendants.

## *OPINION*

STANLEY S. HARRIS, District Judge.

 This matter is before the Court on defendants' motion to dismiss plaintiff's amended complaint for declaratory and injunctive relief.[1] Upon consideration of the entire record, the Court grants defendants' motion to dismiss. Although findings of fact and conclusions of law are unnecessary in ruling on a motion under Rule 12, the Court

---

1. The difference between the plaintiff's original complaint and its amended complaint is that the third cause of action contained in the original complaint (and the accompanying relief requested) were not included in the amended complaint.

nonetheless sets forth its analysis. *See* Fed. R.Civ.P. 52(a).

### Background

Plaintiff Mobil Exploration & Producing U.S., Inc. ("MEPUS") seeks a declaratory judgment that certain revised gas royalty valuations, implemented by defendants the Secretary of the Interior and the Department of the Interior ("DoI") on March 1, 1988, were issued arbitrarily, capriciously, and not in accordance with law.[2] MEPUS also seeks an injunction enjoining the DoI from attempting to collect additional mineral royalties based on these regulations. MEPUS, a corporation incorporated under the laws of the State of Delaware, is the agent of affiliated corporations which own a working interest in, and produce carbon dioxide on, federal leases in the McElmo Dome Unit, which is located in Dolores and Montezuma Counties, Colorado.

Under applicable statute and lease terms, MEPUS is required to pay a royalty determined as a specified percentage of the value of the production removed or sold from the lease.[3] *See, e.g.,* 30 U.S.C. § 226. The Minerals Management Service ("MMS"), an agency of the DoI, collects and disburses royalty revenues from these leases. Regulations, promulgated by the MMS, govern the valuation of gas produced from federal leases for royalty purposes. In 1988, the regulations were revised.

Under the 1988 regulations, the reasonable, actual costs incurred to transport production pursuant to an arm's-length contract for transportation constitute a transportation allowance and are allowed as a deduction. 30 C.F.R. § 206.157(a). This means a lessee may deduct from the sales value of the carbon dioxide the full amount it pays to the pipeline for the transportation. If a lessee has a non-arm's-length transportation contract, the transportation allowance permitted is based upon the lessee's actual costs of transportation as provided in the regulation. The actual costs include operating and maintenance expenses, overhead, and either depreciation and return on undepreciated capital investment, or a cost equal to the initial depreciable investment. The regulation provides specific directions which describe how to make the required computation. 30 C.F.R. § 206.157(b). Thus, a lessee transporting under a non-arm's-length arrangement must calculate an actual transportation cost as prescribed under the regulation, as opposed simply to deducting the full amount it pays to the pipeline for the transportation.

The 1988 regulations further provide that a lessee in a non-arm's-length contract may apply to the MMS for an exception from the requirement that it compute actual costs, but that MMS will grant an exception only if the lessee has a tariff calculation method for the transportation system that is approved by the Federal Energy Regulatory Commission ("FERC") or a state regulatory agency. 30 C.F.R. § 206.157(b)(5). The FERC does not exercise jurisdiction over carbon dioxide pipelines.

To transport the carbon dioxide to its market in western Texas, MEPUS uses a pipeline constructed by the Cortez Pipeline Company ("Cortez"), in which MEPUS is a general partner. In October of 1991, MEPUS made a retroactive transportation allowance claim. In that claim, MEPUS requested MMS approval of the transportation allowance rate it had been using, in lieu of computing actual costs, for the period January 1989 to December 1991. That rate, established by Cortez, is generally based upon a traditional Interstate Commerce Commission ("ICC") ratemaking methodology for oil pipelines.[4] The MMS had previously approved MEPUS's use of the Cortez tariff as a transportation allowance. Under the 1988 regulations, approved allowances "in effect at the time these regulations became effective [would] be allowed to continue until such

---

**2.** The defendants will be referred to collectively hereinafter as "DoI".

**3.** Because of the detailed and complicated nature of the royalty valuation provisions at issue, and because MEPUS's challenges are not properly before the Court at this time, the Court discusses these provisions in general terms.

**4.** The carbon dioxide is shipped through the Cortez pipeline in liquefied rather than gaseous form.

allowances terminate." 30 C.F.R. § 206.157(c)(2)(v).

On May 28, 1992, the Chief of the MMS Royalty Valuation and Standards Division denied MEPUS's request. It also was determined that use of the Cortez pipeline tariff procedure terminated on April 30, 1990. As a result of the decision, MEPUS was required to compute actual transportation costs as prescribed under the 1988 regulations. The calculation of actual costs under the 1988 regulations reduces MEPUS's transportation allowance for the Cortez pipeline by approximately $150,000 per month.

MEPUS appealed the decision administratively to the MMS Director pursuant to 30 C.F.R. Part 290. The appeal is currently pending before the MMS Director and the order has been suspended until administrative review is completed.[5] In its supplemental statement of reasons submitted to the Director in support of the appeal, MEPUS argued that its transportation contract should be viewed as an arm's-length contract under 30 C.F.R. § 206.157(a), and that MMS officials were wrong to terminate MEPUS's grandfathered approval of the tariff rate established by Cortez on the ground that its calculation procedure has not been approved by the FERC in compliance with 30 C.F.R. § 206.157(b)(5). MEPUS now seeks declaratory and injunctive relief under its amended complaint, which purports to challenge these regulations on their face.

*Analysis*

MEPUS states that the Court has jurisdiction to grant the relief requested under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2201 (declaratory judgment). MEPUS's first cause of action is that the DoI's regulations may not lawfully give disparate treatment to identical arm's-length and non-arm's-length transportation contracts. Its second cause of action challenges the DoI's decision in the 1988 regulations to treat non-

arm's-length contracts like arm's-length contracts only when they charge a tariff approved by the FERC or a state agency. The DoI has moved to dismiss with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that MEPUS failed to exhaust its administrative remedies prior to bringing its claims to this Court and that MEPUS's claims are time-barred. The Court examines each of these arguments in turn.

■ In considering a motion to dismiss, the Court must assume the truth of the factual allegations of the complaint and liberally construe them in favor of the plaintiff. It may dismiss the complaint for failure to state a claim only if it appears that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief. *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325–26, 111 S.Ct. 1842, 1845, 114 L.Ed.2d 366 (1991); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994).

*I. Failure To Exhaust Administrative Remedies*

■ The DoI contends that MEPUS's two claims, while masked in terms of a facial challenge to the 1988 regulations, actually present the same issues raised in its pending administrative appeal. Therefore, the DoI claims, MEPUS has failed to exhaust its administrative remedies. Under the Administrative Procedure Act ("APA"), final agency action is a prerequisite to judicial review. 5 U.S.C. § 704. The MMS regulations also require that a lessee exhaust its administrative remedies prior to seeking judicial review. 30 C.F.R. § 243.3. The DoI's rules state:

In order to exhaust administrative remedies, a decision or order of MMS's Royalty Management Program must be appealed pursuant to 30 CFR part 290 to the Director ... and subsequently to the Interior

---

5. It is difficult to discern from the plaintiff's and defendants' pleadings whether the present complaint involves a retroactive transportation allowance claim, and whether MEPUS has already paid the MMS the difference between the transportation allowance established by Cortez and the transportation allowance prescribed under the 1988 regulations. It appears to the Court that the current dispute does concern a retroactive transportation allowance claim for the period January 1989 to December 1991, and that MEPUS has not paid the MMS the difference between the two transportation allowances for this period of time.

Board of Land Appeals ["IBLA"] under 30 CFR part 290.7 and 43 CFR part 4.... 30 C.F.R. § 243.3. Furthermore, it is well settled that as a general rule, "parties [should] exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan,* 503 U.S. 140, 144–45, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992), citing *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 49–52 and n. 9, 58 S.Ct. 459, 463–64 and n. 9, 82 L.Ed. 638 (1938).

■ Exhaustion is required because it serves two purposes: It protects administrative agency authority and promotes judicial efficiency. *Id.* The first purpose is based on administrative autonomy, in that courts should not intervene in an agency's affairs until the agency has completed its action. *McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). When a court refrains from interfering at an intermediate stage of administrative review, the agency is able to apply its special expertise to the disputed matter and correct its own mistakes before it is subjected to judicial review. *Id.* at 192–95, 89 S.Ct. at 1662–63.

■ The second purpose, judicial efficiency, is promoted by exhaustion for similar reasons. "When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted." *McCarthy,* 503 U.S. at 144–46, 112 S.Ct. at 1086–87 (citing, *inter alia, McKart,* 395 U.S. at 194–95, 89 S.Ct. at 1663). Moreover, if a dispute survives the administrative process, the record produced may be useful during judicial inquiry, "especially in a complex or technical factual context." *Id.* 503 U.S. at 145, 112 S.Ct. at 1087 (citation omitted).[6]

■ Nevertheless, even where administrative autonomy and judicial efficiency interests are present, exhaustion is not always required. *Id.* Unless Congress clearly mandates exhaustion, *see Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 577–79, 109 S.Ct. 1361, 1371, 103 L.Ed.2d 602 (1989),

federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.

*McCarthy,* 503 U.S. at 146, 112 S.Ct. at 1087 (quoting *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

### A. Arm's–Length and Non–Arm's–Length Contracts

■ MEPUS argues that the facial challenges it raises in the first portion of its complaint are distinct from the challenges it raises in its appeal to the Director of the MMS. Specifically, MEPUS alleges that its first cause of action is that the DoI's rules may not lawfully give disparate treatment to identical arm's-length and non-arm's-length transportation contracts. In contrast, MEPUS contends that its appeal to the Director of the MMS is based on a different argument—that under the DoI's definition of "arm's-length contract", *see* 30 C.F.R. § 206.151, MEPUS's contract with Cortez is an arm's-length contract. Although these claims are not identical, the substance of the arguments in the first cause of action and in the administrative appeal is the same: The MMS must treat a non-arm's-length arrangement in the same manner as an allegedly identical arm's-length arrangement. MEPUS does not purport to make any facial

---

**6.** The doctrine of ripeness—closely related to the doctrine of exhaustion—is an important consideration here as well. Because the injunctive and declaratory judgment remedies sought by Mobil are discretionary, "courts traditionally have been reluctant to apply them to administrative determinations unless the[y] arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Lab. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct.

1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The ripeness doctrine is similar to the exhaustion doctrine in that its purpose is to prevent the courts from engaging in premature review of agency decisions that may never come to fruition or that may undergo subsequent revisions. *Id.*

challenge to the provisions of 30 C.F.R. § 206.157(a), which treat non-arm's-length contracts differently from arm's-length contracts as a general matter. The dispute does not constitute a facial challenge to the regulation itself, but instead is a question of interpretation of the regulation. In essence, MEPUS is asking that an exception be made in its situation, where the two types of transactions are allegedly identical.

MEPUS further contends that because neither the Director of the MMS nor the IBLA has the authority to invalidate a departmental regulation, any administrative appeal challenging these regulations would be futile. *See, e.g., ANR Production Co.,* 118 I.B.L.A. 338, 343 (1991); *Conoco, Inc., (on reconsideration),* 113 I.B.L.A. 243, 249 (1990) ("[t]his Board has no authority to declare invalid duly promulgated regulations of the Department. Such regulations have the force and effect of law and are binding on the Department").

The Court acknowledges the futility exception to the exhaustion requirement. *See Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 105 (D.C.Cir.1986) (exhaustion not required when "following the administrative remedy would be futile because of certainty of an adverse decision"). However, because the controversy is a question of interpretation rather than a challenge to the regulation on its face, it would not be necessary for the MMS or the IBLA to invalidate the rule. The agency may simply decide that, in this circumstance, a non-arm's-length arrangement must be treated in the same manner as an identical arm's-length arrangement. As a result, MEPUS must await final agency action on its administrative appeal before seeking judicial review.

*B. FERC and State Agency Approved Tariffs*

■ MEPUS also argues that the facial challenges it raises in its second cause of action are distinct from the challenges it raises in its appeal to the MMS Director. MEPUS alleges that its second cause of action contests the DoI's decision in the 1988 rules to treat non-arm's-length contracts like arm's-length contracts only when they

charge a tariff approved by the FERC or a state agency. 30 C.F.R. § 206.157(b)(5). MEPUS further alleges this poses special problems for producers who ship carbon dioxide, because the FERC has held that pipelines which transport carbon dioxide are outside its jurisdiction. *Cortez Pipeline Co.,* 7 F.E.R.C. 61,024 (1979) (carbon dioxide is not a "natural gas" subject to regulation under the Natural Gas Act). MEPUS argues that because 30 C.F.R. § 206.157(b)(5) disallows an exemption when a tariff lacks FERC approval, the provision is arbitrary as applied to a tariff over which the FERC has no jurisdiction. On the other hand, MEPUS contends that its administrative appeal objects to the MMS's attempt to terminate MEPUS's grandfathered approval of its tariff because this method of calculation has not been approved by the FERC.

The DoI argues that the substance of both sets of claims involves interpretation of the regulation, specifically what should be interpreted to constitute an approved tariff. The Court disagrees. Although the allegations in the current controversy and the administrative appeal are based on 30 C.F.R. § 206.157(b)(5), the regulation's provision specifically lists from which agencies the MMS will accept tariff approvals for the purpose of granting exceptions. This provision is not subject to interpretation:

A lessee may apply to the MMS for an exception from the requirement that it compute actual costs in accordance with paragraphs (b)(1) through (b)(4) of this section. The MMS will grant the exception only if the lessee has a tariff for the transportation system approved by the Federal Energy Regulatory Commission (FERC) (for both Federal and Indian leases) or a State regulatory agency (for Federal leases).

C.F.R. 206.157(b)(5). A lessee transporting gas under a non-arm's-length arrangement may not deduct a tariff based on a methodology sanctioned by any other federal agency. As discussed *supra,* the DoI cannot invalidate the challenged rule in an administrative proceeding, *see Conoco, Inc.,* 113 I.B.L.A. at 249, nor expand the scope of the rule in such a proceeding to include tariff approvals by

other agencies, such as the ICC.[7] Thus, the second cause of action is sufficiently distinct from the interpretational question set forth in MEPUS's administrative appeal, because the complaint challenges 30 C.F.R. 206.157(b)(5) on its face. As a result, the Court proceeds to the timeliness issue with regard to plaintiff's second cause of action.

## II. Timeliness

Both parties agree that in general, a civil action against the United States is barred unless "the complaint is filed within six years after the right of action first accrues...." 28 U.S.C. § 2401(a). Nevertheless, MEPUS argues, and the DoI does not dispute, that where regulations are being challenged on a substantive basis as violative of statutory authority, the six-year statute of limitations is not applicable. *See Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147, 152, and n. 1 (D.C.Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990) (drawing distinction between procedural challenges to agency action, which must be brought within statutory review period or be forever barred, and substantive challenges, which are not subject to such a restriction); *N.L.R.B. Union v. Federal Labor Relations Auth.,* 834 F.2d 191, 195 (D.C.Cir.1987) (reversing FLRA finding that challenge to FLRA regulations was time-barred because regulations were promulgated almost seven years earlier; court stated that "a party who possesses standing may challenge regulations directly on the ground that the issuing agency acted in excess of its statutory authority in promulgating them," even after expiration of limitations period).

■ The DoI argues that such out-of-time challenges are only permissible if "further agency action" has been taken implementing the challenged regulations such that the plaintiff has been adversely affected. *See N.L.R.B. Union,* at 195–96 (quoting *Functional Music, Inc. v. Federal Communications Comm'n,* 274 F.2d 543, 546 (D.C.Cir.1958), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959) ("[a]s applied to

rules and regulations, the statutory time limit restricting judicial review of [agency] action is applicable only to cut off review directly from the order promulgating a rule. It does not foreclose subsequent examination of a rule where properly brought before this court for review of further [agency] action applying it")).

In the present case, MEPUS's second cause of action challenges 30 C.F.R. § 206.157(b)(5) on its face. This facial attack is time-barred. Although the MMS did issue an order adverse to MEPUS on May 28, 1992, that preliminary order has been stayed pending MEPUS's administrative appeal of it, pursuant to 30 C.F.R. § 243.2. Although the current facial challenge is sufficiently distinct from the interpretational challenge set forth in MEPUS's administrative appeal, both challenges are based on the same regulation. Because the enforcement of the order has been stayed, and because no final determination has been rendered as to plaintiff's obligations, there is no "further agency action" that is currently affecting MEPUS. Until its administrative appeal is finally resolved, MEPUS cannot seek substantive review of the regulation in the district court. *See Mobil Exploration & Producing U.S., Inc. v. Babbitt,* Civil Action No. 94–0393 (RCL), slip op., 1994 WL 882038 (D.D.C. Nov. 18, 1994), *appeal filed,* No. 94–5394 (D.C.Cir. Dec. 21, 1994) ("*Mobil I*").

■ MEPUS attempts to differentiate between this case and *Mobil I.* That case involved a similar complaint in which facial challenges to 1988 regulations governing royalty provisions similar to the rules contested in the current dispute were found to be time-barred based on grounds similar to those set forth *supra.* MEPUS argues that the case now before the Court is distinguishable on the grounds that: (1) 30 C.F.R. § 206.157(b)(5) was not finally promulgated until November 14, 1988, and the facial challenge therefore is timely; (2) MEPUS should not await the outcome of the administrative appeals process because it faces immediate harm; and (3) the DoI's resolution of the

---

**7.** Furthermore, the fact that the FERC does not regulate pipelines that transport carbon dioxide

is also not subject to interpretation by the MMS.

issue has been, and will continue to be, unreasonably delayed. The Court addresses each of these briefly.

First, 30 C.F.R. § 206.157(b)(5) was indeed amended in November of 1988.[8] However, the amendment merely consisted of "technical corrections" and "clarification." *See* 53 Fed.Reg. 45760–62 (1988). Furthermore, corrections were made only to the section of the rule stating the conditions under which the MMS would deny the exception request; the rule's language stating the agencies from which the MMS will accept tariff approvals is the same as the rule's language before the amendment. Because the MMS "merely republished an existing rule in order to propose minor changes to it," *Public Citizen*, 901 F.2d at 150, the statute of limitations did not start anew.

Next, MEPUS alleges that this case differs from *Mobil I* in that it is financially harmed by awaiting the outcome of its administrative appeal because if MEPUS is found to have overpaid royalties on appeal, the DoI will not pay interest when it refunds overpayments under 43 U.S.C. § 1339(a), and if MEPUS is found to have underpaid royalties, the DoI will bill MEPUS for a higher-than-market penalty rate under 30 U.S.C. § 1721(a), which the DoI admits goes beyond what is needed to compensate the Treasury for the time value of the money.[9] *See Shell Offshore Inc.*, 115 I.B.L.A. 205, 212 (1990). However, these "interest" issues do not amount to irreparable harm. The interest, or lack thereof with regard to refunds, is prescribed by statute. *See* 30 U.S.C. § 1721(a) and 43 U.S.C. § 1339(a). Further-

more, nothing in these statutes or their implementing regulations state that these requirements should be waived while a matter is being administratively appealed. *Id.* Thus, the harm that interest questions pose is not sufficiently direct and immediate to justify bypassing the administrative appeals process and proceeding with judicial review.

Finally, MEPUS contends that this case differs from *Mobil I* in that the DoI has unreasonably delayed its review of MEPUS's administrative appeal.[10] MEPUS claims that the current dispute is the most recent phase in an on-going "campaign" against the corporation in which the DoI refuses to allow MEPUS the same transportation allowances which it has approved for other lessees shipping carbon dioxide through the Cortez pipeline. In support of this allegation, MEPUS cites *Mobil Producing Texas & New Mexico, Inc.*, 115 I.B.L.A. 164 (1990). It claims that administrative decision upheld MEPUS's position in the first phase of the dispute. However, even if that decision somehow marks the beginning of an on-going disagreement between the MMS and MEPUS, it also demonstrates that the administrative appeals process is not futile. "An adverse decision is not certain," *Randolph–Sheppard*, 795 F.2d at 105, because the MMS Director or the IBLA could find in favor of MEPUS on appeal as the IBLA did in *Mobil Producing Texas & New Mexico. See Mobil Producing Texas & New Mexico*, 115 I.B.L.A. 164.

 MEPUS contends that six years will have passed in the current phase of the controversy before it can challenge the rules

---

8. As discussed *supra*, both parties agree that a civil action against the United States is barred if filed after six years from when the right of action first accrues. 28 U.S.C. § 2401(a). MEPUS argues, however, that a right of action against a regulation "first accrues" on its effective date, while the DoI argues that the right to challenge a regulation "first accrues" upon its publication in the *Federal Register*. These identical arguments were made in *Mobil I. See Mobil I*, No. 94-0393, slip op. There, the court stated "[the] facial attack on the 1988 regulations is time-barred (as beyond the applicable six-year statute of limitations) since plaintiff cannot show that 'further agency action' adversely affecting it has been taken...." *Id.* Although the court did not explicitly discuss the merits of each party's argu-

ments, it is clear that the court accepted the defendants' contention that a right of action first accrues upon its publication in the *Federal Register*. *Id. See also Sierra Club v. Penfold*, 857 F.2d 1307 (9th Cir.1988); *Utu Utu Gwaitu Paiute Tribe v. Department of the Interior*, 766 F.Supp. 842 (E.D.Cal.1991).

9. This assertion, of course, is better framed as an exhaustion issue; the Court treats it here because plaintiff has made the assertion in an attempt to distinguish *Mobil I* from this case.

10. Again, this assertion is better raised as an exhaustion issue, but the Court addresses it here for the reasons discussed in n. 9.

in a district court.[11] An unreasonable time frame for an administrative proceeding is a recognized exception to requiring the exhaustion of administrative remedies. *McCarthy v. Madigan*, 503 U.S. at 146, 112 S.Ct. at 1087. However, a prerequisite to invoking the "undue delay" exception is that some form of prejudice to seeking subsequent court action must result from the delay. *Id.* In the cases cited by MEPUS in support of its contention, the total foreclosure of judicial review and an agency's unwillingness to consider a claim are discussed. *See Coit Independence*, 489 U.S. at 587–88, 109 S.Ct. at 1376 (unreasonable delay of the administrative process denies litigant its day in court because the statute of limitations runs); *Walker v. Southern R. Co.*, 385 U.S. 196, 197–98, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966) (unreasonable delay results in no means by which judicial review may be obtained); *Smith v. Illinois Bell Telephone Co.*, 270 U.S. 587, 591–92, 46 S.Ct. 408, 410, 70 L.Ed. 747 (1926) (circumstances surrounding delay suggest that the Illinois State Commerce Commission had no intention of going further with the matter).[12] Neither of these undue prejudices to obtaining subsequent adjudication is present in the case at hand. First, a substantive challenge to the 1988 regulations may be made outside of the six-year statute of limitations. *See Public Citizen*, 901 F.2d at 152 and n. 1; *N.L.R.B. Union*, 834 F.2d at 195. Thus, MEPUS is not barred from challenging the rules in federal court after the administrative appeals process is completed. Second, alleged delay

by the MMS does not signify its unwillingness to consider MEPUS's claim. The agency has already acted by issuing an adverse order. Furthermore, the multi-tiered process of review does not seem to stem from a deliberate effort by the MMS to indefinitely delay resolution of claims, but rather is a result of the complicated and technical nature of royalty valuation provisions. *See McCarthy*, 503 U.S. at 146, 112 S.Ct. at 1087. The agency appears to need the time to apply its expertise in developing a complete factual record and having the opportunity to correct any errors made in the order. *See McKart*, 395 U.S. at 192–95, 89 S.Ct. at 1662–63. Because MEPUS has not shown that it has suffered undue prejudice from the delay, MEPUS has not sufficiently demonstrated that the administrative appeals process warrants being bypassed. After considering MEPUS's interests in immediate judicial review, the Court finds that these interests do not outweigh the DoI's interests favoring exhaustion. *See McCarthy*, 503 U.S. at 146–47, 112 S.Ct. at 1087. Thus, MEPUS must exhaust its administrative remedies before seeking relief from the federal courts. Accordingly, the DoI's motion to dismiss is granted.

### Conclusion

For the reasons stated, the Court grants defendants' motion to dismiss.

**11.** In addition to the two years that have passed since plaintiff's request was denied by the Chief of the MMS Royalty Valuation and Standards Division, plaintiff predicts that it will take another year before the MMS Director issues a decision. It further alleges that the next stage of administrative review, the IBLA, will take three years. Defendants do not dispute these estimates.

**12.** MEPUS cites several cases from this court in its effort to prove that the MMS's delay is unreasonable. These cases are distinguishable as well. In the present case, it is the plaintiff who seeks judicial review before final agency action has been taken. In *MAPCO International, Inc. v. Federal Energy Regulatory Comm'n*, 791 F.Supp. 315 (D.D.C.1992), *aff'd in part and reversed in part*, 993 F.2d 235 (Temp.Emer.Ct.App.1993), it

was the defendant, a federal agency, which sought judicial inquiry before administrative review had been completed. *MAPCO International* also dealt with a procedural claim rather than a substantive claim. *Id.* Second, while the case at hand falls under the APA, which does not contain strict time constraints with regard to administrative review, *Daedalus Enterprises, Inc. v. Baldrige*, 563 F.Supp. 1345 (D.D.C.1983), fell under the Export Administration Act's detailed schedule for processing applications for certain export licenses. Finally, in the instant suit, the agency has already issued a preliminary order, whereas in *Angel v. Pan American World Airways, Inc.*, 519 F.Supp. 1173 (D.D.C.1981), *overruled on other grounds by Paralyzed Veterans of America, Inc. v. Civil Aeronautics Bd.*, 752 F.2d 694 (1985), the plaintiff's original claim was still pending after three years.