# Administrative Settlement of Disputes Concerning Determinations of Mineral Royalties Due the Government

The Department of the Interior is authorized, before the completion of an administrative appeal, to settle disputed determinations of mineral royalties due the government exceeding $100,000 made by the Minerals Management Service without obtaining the approval of the Justice Department under the Federal Claims Collection Act.

July 28, 1998

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL RESOURCES DIVISION
AND THE SOLICITOR
DEPARTMENT OF THE INTERIOR

This responds to your joint letter of September 3, 1997, requesting our opinion concerning the authority of the Department of the Interior ("DOI" or "Interior") and its Minerals Management Service ("MMS") to settle—during the process of administrative review within Interior—disputed mineral royalty payments owed by lessees operating on federal or Indian lands or the offshore Outer Continental Shelf. The specific issue presented is whether DOI is authorized to settle administratively MMS determinations of royalties due exceeding $100,000 (including royalties not governed by the provisions of Public Law 104-185[1]) without obtaining the approval of the Justice Department in accordance with the provisions of 31 U.S.C. § 3711(a)(2) (Supp. III 1997). For reasons explained below, we conclude that DOI does possess such authority.[2]

---

[1] As discussed below, Public Law No. 104-185 made explicit the Secretary of the Interior's authority to settle administratively disputed royalty obligations with respect to oil and gas produced after September 1, 1996. *See* Federal Oil and Gas Royalty Simplification Act of 1996, Pub. L. No. 104-185, § 6(f)(1), 110 Stat. 1700, 1717 (codified at 30 U.S.C. § 1724(i) (Supp. III 1997)) ("Fairness Act"). That law, however, does not apply to Indian leases or to minerals other than oil and gas, such as coal. We are advised by the Department of the Interior, moreover, that unresolved royalty disputes remain pending with respect to oil and gas produced prior to September 1, 1996, and such disputes are not governed by the provisions of Public Law No. 104-185. Resolution of the question presented will therefore affect future actions of the Department of the Interior and, consequently, is appropriate for resolution by this Office.

[2] Our view that the Department of the Interior has the authority to settle administratively royalty disputes that are still pending in the departmental appeals process does not imply that DOI has assumed authority to evaluate the costs of potential court litigation or the risks that might attend such litigation. DOI has not claimed that it has authority to take such factors into account when it settles claims administratively, and our opinion therefore does not address this question.

## I. Background

### A. Interior's Royalty Management and Collection Authority

The Department of the Interior approves and administers leases for oil, gas, coal, and other minerals on federal lands ("onshore" leases), the offshore Outer Continental Shelf ("OCS"), and Indian tribal lands. Lessees are required to pay a monthly royalty as a percentage (usually 12.5% or 16.67%) of the amount or value of the minerals removed or sold from the lease. *See* 30 U.S.C. § 226(b)(1)(A) (1994). The state in which a federal onshore lease is located receives 50% of the royalties (except for Alaska, which receives 90%). *See* 30 U.S.C. § 191(a) (1994).

In 1983, Congress enacted the Federal Oil and Gas Royalty Management Act, 30 U.S.C. §§ 1701–1757 (1994 & Supp. III 1997) ("Royalty Act") to address deficiencies in the federal royalty management system which, according to the General Accounting Office, had cost the federal government up to $500 million annually. To remedy these deficiencies, the Royalty Act was designed to strengthen the ability of the Secretary of Interior to collect oil and gas royalties. *See* H.R. Rep. No. 97-859, at 15 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4268 ("House Report").

Under the Royalty Act, the Secretary is vested with broad responsibility for the determination, management, and collection of these royalties. *See generally Santa Fe Energy Prods. Co. v. McCutcheon*, 90 F.3d 409, 411 (10th Cir. 1996). The Act requires "the development of enforcement practices that ensure the prompt and proper collection and disbursement of oil and gas revenues owed to the United States and Indian lessors." 30 U.S.C. § 1701(b)(3) (1994). Towards that end, the Act directs the Secretary to establish "a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest, fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner." *Id*. § 1711(a). The Royalty Act further provides that the Secretary "shall audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted." *Id*. § 1711(c)(1). The Secretary has delegated responsibility for enforcing royalty payment obligations to the Director and Associate Director of the MMS. *See Santa Fe Energy*, 90 F.3d at 411; 30 C.F.R. §§ 201.100 & 218 (1997).

The Secretary's broad authority under the Royalty Act in determining the amount of royalties due is further reflected in the language contained in standard federal oil and gas leases, which provides:

> It is expressly agreed that the Secretary [of the DOI] may establish reasonable minimum values for purposes of computing royalty on products obtained from this lease, due consideration being given to

the highest price paid for a part or for a majority of production of like quality in the same field, or area, to the price received by the lessee, to posted prices, *and to other relevant matters. Each such determination shall be made only after due notice to the lessee and a reasonable opportunity has been afforded the lessee to be heard.*[3]

In 1996, Congress enacted the Fairness Act. The purpose of the Fairness Act was to improve DOI's management of oil and gas royalties by establishing "clear and equitable provisions for the effective and efficient administration of leases by the Secretary of the Interior." H.R. Rep. No. 104-667, at 13 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1442. Another major purpose of this legislation was to increase the involvement of the States in the Federal royalty management program. *Id*. at 14, 1996 U.S.C.C.A.N. at 1444. The Fairness Act added a new subsection 115(I) to the Royalty Act, providing as follows:

> (i) Collections of disputed amounts due
>
> To expedite collections relating to disputed obligations due within the seven-year period beginning on the date the obligation became due, the parties shall hold not less than one settlement consultation *and the Secretary and the State concerned may take such action as is appropriate to compromise and settle a disputed obligation*, including waiving or reducing interest and allowing offsetting of obligations among leases.

30 U.S.C. § 1724(i) (Supp. III 1997) (emphasis added). The Fairness Act applies only to oil and gas produced after the first day of the month following the Act's date of enactment—i.e., to oil and gas produced after September 1, 1996.[4] It does not apply to other minerals, such as coal, or to oil and gas found on Indian lands.

## B. Interior's Audit, Settlement, and Appeal Procedures

Under the Royalty Act, the Secretary has established a system for the reporting, payment, auditing, and further adjustment or reconciliation of mineral royalties owed by federal lessees. Lessees operating wells and mines on federal or Indian lands report their production and sales and then compute and pay the royalties they owe, on a monthly basis. MMS in turn conducts regular audits and reviews of lessees' reports and royalty payments. Given the vast number of regulated federal

---

[3] *Diamond Shamrock Exploration Co. v. Hodel*, 853 F.2d 1159, 1163 (5th Cir. 1988) (quoting standard federal oil and gas lease ("Standard Lease")) (emphasis added).

[4] The date of enactment of the Fairness Act was August 13, 1996. Pub. L. No. 104-85, § 11, 110 Stat. at 1717, *codified at* 30 U.S.C. § 1701 note.

leases (some 27,000), however, it is impracticable for MMS to audit and pursue additional royalties due with respect to all lessee reports and payments. The Royalty Act therefore requires the Secretary to audit and reconcile federal lease accounts only "to the extent practicable." 30 U.S.C. § 1711(c).[5]

After assessing a lessee's production and sales, MMS auditors may make an initial determination that additional royalties are owed and issue an administrative order calling for the payment of such royalties or the recalculation and payment of recalculated royalties. *See Analysis of MMS Administrative Settlements of Royalty Disputes* at 2 (undated legal memorandum submitted by the Department of the Interior) ("MMS Analysis"). MMS also uses automated systems that review lessees' monthly reports and issue royalty bills automatically. *Id.*

Lessees are entitled to appeal an initial administrative royalty order to the MMS Director. *See* 30 C.F.R. pt. 290 (1997). During the pendency of such an appeal, or any subsequent administrative appeal, the requirement to pay the additional royalties is generally suspended, and the additional royalties may not be collected. *See* 30 C.F.R. §§ 243.2(a), (d)(1) (1997); 43 C.F.R. § 4.21 (1996). A lessee may further appeal an adverse decision by the MMS Director to the Interior Board of Land Appeals ("IBLA") under 30 C.F.R. § 290.7 and 43 C.F.R. pt. 4, unless the Assistant Secretary has previously reviewed and concurred in the Director's decision. Appeals to both the Director and the IBLA receive de novo review. Royalty determinations by both the IBLA and the Assistant Secretary are deemed final agency action subject to judicial review under the Administrative Procedure Act. *See* 5 U.S.C. § 704 (1994); 30 C.F.R. § 243.3; 43 C.F.R. § 4.21(d).

Prior to the conclusion of an appeal to the MMS Director or the IBLA, MMS officials sometimes settle the disputed amount of additional royalties due through a stipulation or agreement with the lessee. It is DOI's authority to undertake this form of settlement that is in issue here.

### C. The Federal Claims Collection Act

The Federal Claims Collection Act ("FCCA") was enacted in 1966 in order to remedy the inadequacies of most federal agencies in recovering on claims of the United States arising out of their respective activities. Pub. L. No. 89-508, 80 Stat. 308 (1966) (codified as amended at 31 U.S.C. § 3711); S. Rep. No. 89-1331, at 2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2532, 2533. In 1982, the FCCA was amended by the Debt Collection Act of 1982 ("DCA"), Pub. L. No. 97-365, secs.

---

[5] MMS regulations do not specify the frequency of required audits of oil and gas leases. *See* 30 C.F.R. § 217.50 (1997). With respect to coal and other solid mineral leases, audits may be required annually or at other times as directed by the appropriate agency official. *Id.* §§ 217.200 & 217.250. The Royalty Act does provide that "[t]he Secretary shall give priority to auditing the lease accounts identified by a State or Indian Tribe as having significant potential for underpayment." 30 U.S.C. § 1711(c)(1).

10, 11, §§ 952, 954, 96 Stat. 1749, 1754–56. Under the FCCA, as amended, a federal agency is authorized to compromise or settle a government "claim" of not more than $100,000 without the participation or approval of the Justice Department. Covered claims exceeding $100,000, on the other hand, must receive Department of Justice approval. 31 U.S.C. § 3711(a)(2).[6]

Regulations establishing the standards for settlements under the FCCA, known as the Federal Claims Collection Standards ("Collection Standards"), have been jointly promulgated by the Attorney General and the Comptroller General. 4 C.F.R. pts. 101–105 (1997). Those regulations provide:

> Nothing contained in this chapter is intended to preclude agency disposition of any claim under statutes and implementing regulations other than [the FCCA] and these Standards, providing for the collection, compromise, termination of collection action, or waiver in whole or in part of such a claim. . . . In such cases, the laws and regulations which are specifically applicable to claims collection activities of a particular agency take precedence over this chapter.

*Id*. § 101.4.

### D. Questions Raised Concerning DOI Authority

The issues considered here have been precipitated by questions raised by Representative Carolyn B. Maloney concerning DOI's authority to settle royalty disputes, in general, and certain disputes with Exxon Company U.S.A. and Chevron U.S.A., Inc., in particular. In a series of letters sent to the Departments of Justice and Interior, Representative Maloney has questioned DOI's authority to resolve royalty disputes involving more than $100,000 without the approval of the Justice Department.

In response to a separate inquiry from Representative Maloney, the Congressional Research Service ("CRS") of the Library of Congress provided a memorandum concerning MMS's authority to settle government claims for mineral royalty payments. Memorandum for Carolyn Maloney from American Law Division, Congressional Research Service, *Re: Settlement Authority of the Minerals Management Service of the Department of Interior* (June 26, 1997) ("CRS

---

[6] As originally enacted, the FCCA specified: "Nothing in this Act shall increase or diminish the existing authority of the head of an agency to litigate claims, or diminish his existing authority to settle, compromise, or close claims." *Id*. § 4, 80 Stat. at 351. It therefore did not reduce or diminish the separate statutory authority possessed by some federal agencies to settle or compromise claims. The current language of the FCCA, as amended by the DCA, similarly recognizes the independent settlement authority possessed by some agencies. It provides: "*Except as provided in this chapter or another law*, all claims of or against the United States shall be settled [as provided in the FCCA]." 31 U.S.C. § 3702(a) (Supp. III 1997) (emphasis added).

Memorandum"). The CRS Memorandum opined that the Royalty Act did not provide DOI with independent authority to settle disputed MMS royalty determinations without compliance with the FCCA. The CRS Memorandum also discussed whether disputed MMS determinations of royalty underpayments would constitute "claims" of the United States, the compromise of which would be subject to the provisions of the FCCA and the Claims Collection Standards. Noting that a "claim" generally does not arise until a determination is made "by an appropriate official of the Federal Government," *see* 31 U.S.C. § 3701(b)(1) (Supp. III 1997); 4 C.F.R. § 101.2(a) (1997), CRS stated that "it appears Congress left the actual designation of the 'appropriate official' to be defined by the agency." CRS Memorandum at 5. The CRS Memorandum did not, however, assert a definitive conclusion as to whether MMS's non-final administrative determinations of royalties due constitute a "claim" or "debt" for purposes of triggering coverage under the FCCA.

In response to another inquiry from Representative Maloney, the General Accounting Office ("GAO") issued an opinion on September 30, 1997, concerning the agreements entered into by DOI resolving major royalty disputes with Exxon and Chevron in 1993 and 1994.[7] Representative Maloney had questioned whether DOI was legally authorized to enter into those agreements without the approval of the Justice Department. GAO opined that DOI lacked independent authority under the Royalty Act to "compromise" disputed MMS royalty determinations on the grounds that DOI's claimed authority to settle administrative claims does not permit it to accept "less than the full amount owed in full satisfaction of the claim." GAO Letter at 7. GAO further opined that the Associate Director of the MMS constitutes an "appropriate agency official" whose royalty determinations give rise to a "claim" or "debt" that is subject to the FCCA and the DOJ/GAO Collection Standards under the governing definitions. *Id*. at 6. GAO therefore indicated that DOI could not compromise a demand for additional royalties exceeding $100,000 that was based on a determination made by the MMS Associate Director (or, presumably, a superior MMS or DOI official authorized to make such determinations) without first obtaining Department of Justice approval in accordance with the FCCA. *Id*. at 6–7. GAO also determined that the Department of Justice had been a party to the 1994 Chevron settlement and that settlement, therefore, was in compliance with FCCA requirements. However, GAO further opined: "To the extent the 1993 MMS settlement agreement with Exxon

---

[7] Letter for Carolyn B. Maloney, House of Representatives, from Robert Murphy, General Counsel, General Accounting Office (Sept. 30, 1997) ("GAO Letter"). Although the opinions and legal interpretations of the GAO and the Comptroller General often provide helpful guidance on appropriations matters and related issues, they are not binding upon departments, agencies, or officers of the executive branch. *See Bowsher v. Synar*, 478 U.S. 714, 727–32 (1986).

Company U.S.A. compromised claims exceeding $100,000, that agreement should have been referred to the Department of Justice for approval." *Id*. at 8.

You have sought our legal opinion concerning DOI's authority (including its authority as to oil and gas produced before the effective date of the Fairness Act) to settle royalty disputes exceeding $100,000 with federal lessees, following an MMS determination of the amount due, without the approval of the Justice Department pursuant to the FCCA.

## II. Analysis

### A. Authority of the Secretary to Determine and Collect Royalties

Your inquiry concerns the relationship between the Secretary of the Interior's royalty collection and management authority under the Royalty Act and the requirements governing the settlement of claims by the United States that are subject to the FCCA. Because it is important to our analysis, we first examine the nature of the Secretary's authority to determine and collect additional royalties owed the United States by federal lessees.

DOI contends that the "[a]uthority to administratively settle disputed royalty matters inheres in the responsibilities that the mineral leasing laws . . . impose on the Secretary of the Interior."[8] In order to discharge his statutory responsibility to audit, collect, and reconcile royalties due the United States, DOI asserts, "the Secretary necessarily must be able to resolve disputed issues with lessees during the administrative process" in a manner he determines to be in the Government's interest. MMS Analysis at 2. In this connection, DOI particularly relies on the provisions of section 101(c)(1) of the Royalty Act, 30 U.S.C. § 1711(c)(1), which directs the Secretary to "audit and reconcile" lease accounts "to the extent practicable," and to "take appropriate actions to make additional collections or refunds as warranted."

Although the Royalty Act did not grant the Secretary the authority to "compromise" or "settle" disputed royalty payments in explicit terms prior to the 1996 amendments,[9] we believe that section 101(c) authorizes him to collect additional royalties in amounts less than those initially assessed by MMS when he finds that such action is warranted under the Royalty Act. The broad royalty collection and management authority granted the Secretary under the Act as a whole reinforces

---

[8] *See* MMS Analysis at 5.

[9] It is clear that DOI and the relevant state concerned have authority under the Royalty Act to settle those royalty disputes now covered by the provisions of the Fairness Act, which authorized "the Secretary and the State concerned [to] take such action as is appropriate to compromise and settle a disputed obligation" with respect to oil and gas produced subsequent to September 1, 1996. 30 U.S.C. § 1724(i). We do not undertake in this memorandum to address the relative settlement responsibilities of the Secretary and the state concerned under this provision.

our conclusion on this point. *Cf. Dale M. Madden Constr., Inc. v. Hodgson*, 502 F.2d 278, 279–80 (9th Cir. 1974) (adopting a broad interpretation of the Secretary of Labor's authority to settle penalties under the Occupational Safety and Health Act "as a natural incident to his enforcement powers").

The Royalty Act charges the Secretary with responsibility for "the development of enforcement practices that ensure the prompt and proper collection" of federal oil and gas revenues. 30 U.S.C. § 1701(b)(3). As emphasized in the House Report accompanying the Royalty Act: "The Committee intended that the Secretary have broad enforcement authority relating to his royalty and lease management functions." H.R. Rep. No. 97-859, at 37, *reprinted in* 1982 U.S.C.C.A.N. at 4286. The Act's legislative history is replete with additional affirmations of the Secretary's broad authority in the area of royalty management and collection.[10]

The most pertinent provision of the Royalty Act with regard to the Secretary's authority to assess and collect additional oil and gas royalties is section 101(c)(1), which provides: "The Secretary shall audit and reconcile, *to the extent practicable*, all current and past lease accounts for leases of oil or gas *and take appropriate actions to make additional collections or refunds as warranted*." 30 U.S.C. § 1711(c)(1) (emphasis added). This provision allows the Secretary considerable flexibility in making "additional collections" of royalties beyond those recorded and paid by lessees themselves prior to audit and demand by MMS.

In this regard, we note that the Secretary initially has discretion in determining how many (and which) accounts to audit and reconcile *at all*. *See* 30 U.S.C. § 1711(c)(1) (Secretary required to audit and reconcile leases only "to the extent practicable"). As noted above, the large number of regulated federal leases renders it impracticable for MMS to audit all of their royalty reports and payments.[11] The very magnitude and complexity of the royalty collection process thus necessitates the element of enforcement flexibility that Congress has entrusted to the Secretary under the Royalty Act.

Significantly, the Secretary's statutory obligation to pursue additional royalty collections is expressly limited to those measures that are "appropriate" and "warranted." Such discretionary language is difficult to reconcile with the view that the Secretary's range of authority is rigidly limited to either (1) collecting all

---

[10] As emphasized in the House Report: "The Committee intended to provide the Secretary with all authority necessary to carry out the provisions of the bill." H.R. Rep. No. 97-859, at 39, *reprinted in* 1982 U.S.C.C.A.N. at 4293. The Report further states: "It is the responsibility of the Secretary of the Interior to establish a comprehensive system to accurately determine, collect, and account for on a timely basis oil and gas royalties, interest, fines, penalty fees, deposits, and other payments." *Id.* at 28, *reprinted in* 1982 U.S.C.C.A.N. at 4282.

[11] As recognized by one court construing the Royalty Act, "that an OCS lease account will be audited at all is guaranteed only 'to the extent (it is) practicable' for the Secretary to conduct the audit." *Phillips Petroleum Co. v. Kelly*, 1992 WL 387236, *6 (N.D. Tex. 1992) (quoting 30 U.S.C.A. § 1711(c)(1) (West 1986)).

additional royalties assessed under a *disputed* and *non-final* administrative determination or (2) requiring the completion of a formal administrative appeal of such a disputed determination before it can be adjusted downward. In some circumstances, the Secretary may reasonably conclude, *before* the complete adjudication of a formal appeal, that collection of the amount initially determined to be due by the MMS auditing officer or MMS Director may not be "warranted" and that collection of a lesser amount may be "appropriate." That might be the case, for example, where the factual or legal basis of the disputed MMS demand for the full additional amount is uncertain. In such cases, we think that the flexible provisions of section 101(c)(1), coupled with other provisions of the Royalty Act, forcefully imply that the Secretary has authority to determine that a lesser amount is due.

## B. Applicability of the Federal Claims Collection Act

The applicability of the FCCA depends initially upon whether the amount of additional royalties sought by the government constitutes a "claim" or "debt" within the meaning of 31 U.S.C. § 3701(b)(1). As stated by the Court of Appeals for the Federal Circuit, "in order for the [Debt Collection Act] to be applicable in a given situation, the government must have a 'claim' against a 'debtor' as a result of a 'debt' owed the United States." *King v. MSPB*, 105 F.3d 635, 640 (Fed. Cir. 1997). A "claim" is defined under the DOJ/GAO Collection standards as follows:

> For the purposes of these standards, the terms "claim" and "debt" are deemed synonymous and interchangeable. They refer to an amount of money or property which has been determined *by an appropriate agency official* to be owed to the United States from any person, organization, or entity, except another Federal agency.

4 C.F.R. § 101.2(a) (emphasis added).[12]

---

[12] The current statutory definition of a "claim" under the FCCA was added in 1996 by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, tit. III, § 31001(z)(1), 110 Stat. 1321, 1321-378 (codified at 31 U.S.C. § 3701(b)(1) (Supp. III 1997)), and provides in relevant part:

> [T]he term 'claim' or 'debt' means any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency.

Prior to the 1996 amendments, the FCCA provided:

> In subchapter II of this chapter [governing "Claims of the United States Government"], "claim" includes amounts owing on account of loans insured or guaranteed by the Government and other amounts due the Government.

31 U.S.C. § 3701(b) (1994). The definition used in the DOJ/GAO Collection Standards (quoted in the text) was promulgated in 1984, *see* 49 Fed. Reg. 8889, 8896 (1984), and reflects the Department's

DOI contends that its disputed assertions that additional royalty payments are due do not become "claims" for purposes of the FCCA until a final administrative determination has been made by either the IBLA or the Assistant Secretary. *See* 30 C.F.R. § 243.3. It is the decisions by those officials, DOI asserts, that constitute the "'determin[ation] by an appropriate agency official'" which alone gives rise to a "claim" covered by the FCCA and the Collection Standards. MMS Analysis at 7–8 (quoting 4 C.F.R. § 101.2(a)).

Initially, we recognize that the accurate determination of the value of production upon which royalties are based is a complex task, which may entail substantial disagreement between reasonable and informed evaluators. *See* MMS Analysis at 3–4; *see generally Diamond Shamrock Exploration Co. v. Hodel*, 853 F.2d 1159 (5th Cir. 1988) (resolving directly conflicting district court opinions concerning the application of royalty requirements to "take-or-pay" clause in gas sales contract). Consequently, MMS royalty determinations made in the early stages of the administrative process are not necessarily regarded as conclusive and may be subject to significant revision as they move through the various levels of administrative appeal. In this respect, DOI's carefully layered process of administrative review appears consistent with the Secretary's mandate to develop enforcement practices that ensure the "proper collection" of royalties owed to the United States. *See* 30 U.S.C. § 1701(b)(3).

The significance of this consideration is also reflected in the terms of the leases governing the drilling and removal of oil and gas from federal or Indian lands or the OCS. The leases typically provide that the Secretary's authority to establish "reasonable minimum values for purposes of computing royalty" is subject to the lessee's right to notice and "a reasonable opportunity to be heard." *See Standard Lease* (quoted in text accompanying note 3, *supra*). We are advised that, under DOI practice, the "opportunity to be heard" referred to in the leases encompasses the MMS/DOI administrative appeal process. Consequently, the Secretary has not made a conclusive determination of the contested royalties due until administrative appeals have been exhausted or bypassed.

Significantly, MMS orders to pay additional royalties are generally suspended and unenforceable during the pendency of all administrative appeals. *See* 30 C.F.R. § 243.2; *Mobil Exploration & Producing U.S., Inc. v. Babbitt*, 913 F. Supp. 5, 9 (D.D.C. 1995).[13] Thus, until the Assistant Secretary or the IBLA has made a

interpretation of claims or debts covered by the FCCA prior to the 1996 amendments, but it is also consistent with, and virtually identical to, the definition currently codified at 31 U.S.C. § 3701(b)(1).

[13] In some circumstances, the MMS Director may provide that the royalty payment order will not be suspended pending the administrative appeal. *See* 30 C.F.R. §§ 243.2(a), (d)(1). We are advised by DOI that denial of suspension pending appeal is invoked only in unusual circumstances. In any event, the denial of suspension pending administrative appeal is equated with final agency action, and satisfies the lessees' obligation to exhaust administrative remedies as a prerequisite to judicial review, under

final administrative determination (or where the lessee has not appealed an earlier order or a determination by the MMS Director), a contested demand for additional royalty payments has not been conclusively determined and it may not be referred to the Department of Justice for litigation or other collection action.[14] We therefore concur in DOI's assertion that contested royalty orders issued by MMS officers or the MMS Director preceding determinations by the IBLA or the Assistant Secretary do not constitute determinations "by an appropriate agency official" that give rise to a "claim" within the meaning of the FCCA. 4 C.F.R. § 101.2(a).[15]

As noted above, the GAO, in its letter of September 30, 1997, concluded that the Associate Director of MMS was the "appropriate agency official" to establish a debt or claim for the purposes of the Royalty Act. The GAO based this interpretation on DOI's assignment to the Associate Director of authority to make the initial determination of the amount of royalties owed. GAO Letter at 6. The GAO letter does not, however, take into account that this initial determination is not final within Interior if a company files an administrative appeal. For the reasons we have noted above, we disagree with GAO with respect to the meaning of "appropriate agency official" in cases where a company has filed an administrative appeal. The appropriate agency official is the person within the agency who is charged with making the final decision on the amount owed. This may be the Associate Director, if the initial determination is not appealed, but if that determination is appealed, it is the MMS Director, the Assistant Secretary, or the IBLA.

This Office has previously considered a similar issue concerning the FCCA's applicability to non-final administrative determinations by DOI. In 1975, GAO requested our views concerning DOI's authority to settle the amount of certain administrative penalties assessed against coal mine operators under section 109(a) of the Federal Coal Mine Health and Safety Act of 1969 (codified as amended at 30 U.S.C. § 820(a) (1994)). The specific issue was "whether such a compromise is

---

MMS regulations. *See* 30 C.F.R. § 243.3. In those particular circumstances, we believe the demand for additional royalties would ripen into a "claim" that is subject to the requirements of the FCCA.

[14] We also note that intermediate determinations by the MMS Director, the Associate Director, or lesser MMS officials are not considered "final agency action" for purposes of satisfying the exhaustion of remedies requirements of the APA, 5 U.S.C. § 704. *See* 30 C.F.R. § 243.3; *Mobil Exploration*, 913 F. Supp. at 9–11. Cf. *Independent. Petroleum Ass'n of America v. Babbitt*, 92 F.3d 1248 (D.C. Cir. 1996), where, in concluding that a letter from the MMS Associate Director clarifying its treatment of certain royalty issues did not constitute a rulemaking within the meaning of the APA, the court approvingly quoted the district court's finding that "'[n]othing in DOI's procedures vests authority in the Associate Director of MMS [the letter's author], or even the Director, to issue proclamations binding on the agency.'" *Id.* at 1256 (quoting *Indep. Petroleum Ass'n of Am. v. Babbitt*, 1995 WL 431305, at *4 (D.D.C. June 14, 1995), *rev'd on other grounds*, *Indep. Petroleum*, 92 F.3d 1248).

[15] We also concur in the CRS's conclusion that "it appears Congress left the actual designation of the 'appropriate official' [for purposes of giving rise to a "claim" under the FCCA] to be defined by the agency." CRS Memorandum at 5. As the CRS Memorandum also correctly indicates, *id.* at 5 n.20, DOI's interpretation of that provision is entitled to substantial deference under the *Chevron* doctrine. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

subject to the Claims Collection Act and the standards promulgated by the Comptroller General and the Attorney General." Letter for Rollee Lowenstein, Assistant General Counsel, General Accounting Office, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel at 2 (Oct. 21, 1975) ("Ulman Opinion"). The particular administrative procedures at issue in that opinion were described as follows:

> After review of a notice of violation of health or safety standards, the Mining Enforcement and Safety Administration serves upon the mine operator a (recommended) order of assessment; the mine operator requests a hearing before Interior's Office of Hearings and Appeals; prior to the administrative hearing, a settlement is reached. Thus, the effect of the settlement is to terminate the proceeding before there is a final administrative decision regarding violation and assessment of a penalty.

*Id.* at 2–3 (footnotes omitted).

Stressing the non-final nature of DOI's administrative determination, we concluded that a "claim" had not arisen in those circumstances and that the FCCA did not apply:

> In these circumstances, it seems proper for Interior to maintain that there is no "claim" for purposes of the Claims Collection Act and to regard such settlements as an element in the exercise of the Secretary's authority to assess penalties. . . . It is reasonable to assume that, at least in the present context, "claim" connotes a degree of finality.

*Id.* at 3.

We believe that the reasoning we applied in the Ulman Opinion is directly applicable here, and we find no persuasive basis for abandoning that reasoning in this context. Like the penalty settlements at issue there, the MMS royalty settlements considered here are undertaken "before there is a final administrative decision." Just as we concluded in the Ulman Opinion that the settlement authority in question was "an element in the exercise of the Secretary's authority to assess penalties" under the Coal Mine Health and Safety Act, *id.* at 3, we find that the settlement authority in question here is an element in the exercise of the Secretary's responsibility "to take appropriate actions to make additional collections . . . as warranted" under section 101(c)(1) of the Royalty Act. We therefore conclude that appealed determinations of additional royalties due by the MMS Director and lesser MMS officials do not constitute "claims" subject to the requirements of the FCCA until a final determination of the amount due has been made by the Assistant Secretary or the IBLA. As a result, the FCCA requirement for Justice

Department approval does not apply until this final determination is made and the amount of the claim is established by the Department of the Interior.

TODD DAVID PETERSON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*